B 104   (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|
| **PLAINTIFF**<br>THE FINLEY GROUP, LIQUIDATING AGENT FOR REDF MARKETING, LLC | **DEFENDANTS**<br>DANIEL J. ROSELLI and SARA GARCES ROSELLI |
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br><br>Andrew T. Houston<br>Moon Wright & Houston<br>121 W. Trade Street, Suite 1950<br>Charlotte, North Carolina 28202<br>Telephone:  704-944-6560 | ATTORNEYS (If Known)<br><br>Bradley Pearce<br>Pearce Law PLLC<br>P.O. Box 31846<br>Charlotte, NC 28231 |
| **PARTY** (Check one box only)<br>☒ Debtor     ☐ U.S. Trustee/Bankruptcy Admin.<br>☐ Creditor   ☐ Other<br>☐ Trustee | **PARTY** (Check one box only)<br>☐ Debtor     ☐ U.S. Trustee/Bankruptcy Admin.<br>☐ Creditor   ☒ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Violation of Plan Injunction/Sanctions Pursuant to 11 U.S.C. §105, Turnover of Property of the Estate—Pursuant to 11 U.S.C. § 542.

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| | |
|---|---|
| **FRBP 7001(1)— Recovery of Money/Property**<br>☒ 11-Recovery of money/property - §542 turnover of property<br>☐ 12-Recovery of money/property - §547 preference<br>☐ 13-Recovery of money/property - §548 fraudulent transfer<br>☒ 14-Recovery of money/property – other<br><br>**FRBP 7001(2) — Validity, Priority or Extent of Lien**<br>☐ 21-Validity, priority or extent of lien or other interest in property<br><br>**FRBP 7001(3)— Approval of Sale of Property**<br>☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)<br><br>FRBP 7001(4) – Objection/Revocation of Discharge<br>☐ 41 -Objection **/** revocation of discharge  §727(c),(d),(e)<br><br>**FRBP 7001(5) — Revocation of Confirmation**<br>☐ 51-Revocation of confirmation<br><br>**FRBP 7001(6)— Dischargeability**<br>☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims<br>☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud<br>☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny<br><br>**(continued next column)** | **FRBP 7001(6)— Dischargeability (continued)**<br>☐ 61-Dischargeability - §523(a)(5), domestic support<br>☐ 68-Dischargeability - §523(a)(6), willful and malicious injury<br>☐ 63-Dischargeability - §523(a)(8), student loan<br>☐ 64-Dischargeability - *§5*23(a)15), divorce or separation Obligation (other than domestic support)<br>☐ 65-Dischargeability – other<br><br>**FRBP 7001(7)** – **Injunctive Relief**<br>☐ 71-Injunctive relief— imposition of stay<br>☐ 72-Injunctive relief— other<br><br>**FRBP 7001(8) Subordination of Claim or Interest**<br>☐ 81-Subordination of claim or interest<br><br>**PREP 7001(9) Declaratory Judgment**<br>☐ 91-Declaratory judgment<br><br>**PREP 7001(10) Determination of Removed Action**<br>☐ 01-Determination of removed claim or cause<br><br>**Other**<br>☐ SS-SIPA Case—15 U.S.C. §78aaa *et.seq.*<br>☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case) |

| | |
|---|---|
| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | Demand – At Least $700,000.00 |
| Other Relief Sought | |

MWH: 10116.003; 00017576.1

| BANKRUPTY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>**REDF MARKETING, LLC** | | BANKRUPTCY CASE NO.<br>12-32462 |
| DISTRICT IN WHICH CASE IS PENDING<br>WESTERN | DIVISIONAL OFFICE<br>CHARLOTTE | NAME OF JUDGE<br>J. CRAIG WHITLEY |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>*/s/ Andrew T. Houston* | | |
| DATE<br>June 21, 2017 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Andrew T. Houston | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management Electronic Case Filing system (CM/ECF), (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys**. Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature**. This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| **In re:** <br><br> **REDF MARKETING, LLC,** <br><br> Debtor. | Chapter 11 <br><br> Case No: 12-32462 |
| **THE FINLEY GROUP, Liquidating Agent for REDF MARKETING, LLC,** <br><br> Plaintiff, <br><br> v. <br><br> **DANIEL J. ROSELLI and SARA GARCES ROSELLI,** <br><br> Defendants. | Adversary Proceeding No.: 17-_____ |

**COMPLAINT FOR: (I) VIOLATION OF PLAN INJUNCTION, (II) TURNOVER OF PROPERTY OF THE ESTATE, (III) CONVERSION, AND (IV) RELATED RELIEF**

NOW COMES the plaintiff, The Finley Group (the "Plaintiff" or the "Liquidating Agent"), as the liquidating agent for RedF Marketing, LLC (the "Debtor" or "RedF Marketing"), and hereby alleges as follows:

**PARTIES**

1. Plaintiff is the duly appointed liquidating agent for the Debtor's bankruptcy estate pursuant to the confirmed *Plan of Liquidation of RedF Marketing, LLC Pursuant to Section 1121(a) of the Bankruptcy Code* dated December 29, 2012, as modified by the *Modification of Plan* dated March 25, 2013, and further modified by the *Second Modification of Plan* filed on March 26, 2013 (collectively, the "Plan").

MWH: 10116.003; 00017282.5                                1

2.  Defendant Daniel J. Roselli ("Dan Roselli") is an individual and citizen of the State of North Carolina residing in Charlotte, Mecklenburg County, North Carolina.

3.  Defendant Sara Garces Roselli ("Sara Roselli," and together with Dan Roselli, the "Rosellis") is an individual and citizen of the State of North Carolina residing in Charlotte, Mecklenburg County, North Carolina.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

5.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.  Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1409.

7.  The statutory predicates for relief are 11 U.S.C. §§ 105, 541, and 542.

8.  The Plaintiff commences this action pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure and the provisions of the Plan.

## FACTUAL ALLEGATIONS

### A. *History of the Debtor's Bankruptcy Proceeding and the Debtor's Bankruptcy Plan*

9.  On October 12, 2012, an involuntary petition for relief under chapter 7 of the Bankruptcy Code was filed against the Debtor.

10. By entry of an order dated October 29, 2012, the Court converted the case to a proceeding under chapter 11 of the Bankruptcy Code.

11. Pursuant to Articles 1.6, 1.22, 1.46, 7.2, 9.1, and 9.9 of the Plan, among other provisions, all claims of the estate were preserved by the Plan, and the liquidating agent was appointed as the representative of the estate pursuant to 11 U.S.C. §§ 105(a) and 1123(b)(3) to

pursue such claims. Further, the net recoveries from the pursuit of the estate's claims were earmarked to pay unsecured creditors under Article 3.3.2 of the Plan.

12. Article 7.2 of the Plan provided that "the Liquidating Agent shall have all standing, rights, powers, and duties accorded to trustees under chapters 3 and 5 of the Bankruptcy Code . . . ."

13. The Rosellis lost all of their remaining economic and management rights in the Debtor and its assets on the Plan's "Effective Date" pursuant to Articles 3.5 and 7.9 of the Plan and North Carolina law.

14. Specifically, Article 3.5.2 of the Plan provided: "[t]he holders of Equity Interests in the Debtor will not receive or retain any property under the Plan. Upon the Effective Date of the Plan, the Equity Interests in the Debtor shall be cancelled."

15. Further, Article 7.9 of the Plan provided that upon confirmation of the Plan, "the Rosellis shall waive their General Unsecured Claims against the Debtor and the Estate . . . ."

16. Upon the cancellation of their membership interests under the Plan, the Rosellis' management rights in the Debtor were also terminated by operation of the North Carolina Limited Liability Company Act, which provides: "[a] person shall continue to serve as a manager until the earliest of the following occurs . . . that person . . . ceases to be a member." *See* N.C. Gen. Stat. § 57D-3-20(e).

17. The Plan also released the Rosellis from certain claims of the bankruptcy estate as set forth in Article 7.9 of the Plan. Article 7.9 provided that it was intended "as a motion to approve the terms of this settlement agreement pursuant to Federal Rule of Bankruptcy Procedure 9019."

18.     The Court entered an Order confirming the Debtor's Plan on April 29, 2013 (the "Confirmation Order").

19.     In part, the Confirmation Order provided that:

   a. the Rosellis and their "Related Entities" were released as set forth in Article 7.9 of the Plan and that such release was "fair and equitable," and

   b. the releases set forth in Article 7.9 of the Plan were approved.

20.     The estate's release of the Rosellis set forth in Article 7.9 of the Plan and Paragraph 17 of the Confirmation Order did not prohibit parties from enforcing the Plan or Confirmation Order, nor did the scope of the release cover claims against the Rosellis that accrued based on facts that occurred after the Plan's "Effective Date."

21.     The Court specifically retained jurisdiction over the enforcement of the Confirmation Order.

22.     Paragraph 16 of the Confirmation Order also contained an injunction that prohibited the Rosellis "…from and after the Effective Date, from: (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Interest against the Debtor, the Estate, or the Buyer . . . and (e) pursuing any Claim released in the Modified Plan."  Paragraph 16 of the Confirmation Order is referred to herein as the "Plan Injunction."

23.     The Effective Date of the Plan occurred on May 2, 2013.

24.     Subsequent to the Effective Date of the Plan, the Rosellis have undertaken a series of actions that violate the terms of the Plan, the express provisions of the Confirmation Order and the Plan Injunction, and they have repudiated and breached the duty of good faith and fair

dealing owed to creditors by attempting to deprive them of the valuable consideration creditors bargained for when voting to accept the Plan.

### B. *The Rosellis' Repudiation and Breach of the Plan.*

25. Following confirmation of the Plan, the Rosellis breached or repudiated the Plan through the following actions, among others:

   a. filing objections to proposed settlements of potential avoidance action claims being pursued by the Plaintiff for the benefit of the Debtor's creditors and arguing that Plaintiff was not authorized to pursue such claims despite the unambiguous terms of Articles 1.6, 1.22, 1.46, 3.3.2, 7.2, 9.1, and 9.9 preserving such claims for the benefit of creditors;

   b. soliciting defendants in adversary proceedings initiated by the Plaintiff to enter into "Joint Interest Agreements," the express purpose of which was to actively assist these parties in defeating avoidance action claims preserved in Articles 1.6, 1.22, 1.46, 3.3.2, 7.2, 9.1, and 9.9 preserving such claims for the benefit of creditors;

   c. moving to dismiss the Plaintiff's complaint in the case captioned *The Finley Group v. Fifth Third Bank d/b/a Fifth Third Bank, Inc.*, Adv. Proc. 14-3254;

   d. filing affidavits with the Court stating unequivocally that they never intended for claims to be pursued despite the unambiguous terms of Articles 1.6, 1.22, 1.46, 3.3.2, 7.2, 9.1, and 9.9 of the Plan to the contrary;

   e. filing a motion seeking the allowance of a general unsecured claim against the estate in the amount of $861,446.91, in violation of Article 7.9 of the Plan and the Plan Injunction; and

  f. asserting management and control rights over the Debtor in violation of, among other provisions, Article 3.5 of the Plan when filing state and federal tax returns on behalf of the Debtor after the Plan's Effective Date as discussed below.

### C. Factual Background Regarding the Debtor and its Tax Treatment

26. The Debtor was a limited liability company organized and existing under North Carolina law.

27. The Debtor operated an advertising and marketing agency in Charlotte, North Carolina.

28. At all relevant times prior to the Effective Date, the Debtor was owned by the Rosellis. Sara Roselli owned 51% of the Debtor's membership interests, and Dan Roselli owned 49% of the Debtor's membership interests.

29. The Debtor was treated as a partnership with respect to the payment of federal and state income taxes.

30. Consequently, the Debtor was treated as a "pass through" entity whereby the company's income or loss passed through to the Rosellis for tax purposes.

31. Accordingly, the Rosellis were personally liable for the payment of the income taxes attributable to the Debtor. Conversely, the Debtor was not liable for the payment of the Rosellis' personal federal and state income taxes.

### D. The Debtor Paid the Rosellis' Tax Liabilities

32. Prior to its bankruptcy filing, the Debtor paid the Rosellis' taxes from the Debtor's operating account to the United States of America (the "USA") and the State of North Carolina (the "State").

33. Specifically, the Debtor made the following payments from its operating account directly to the USA between January 24, 2011 and January 20, 2012, in the aggregate amount of $639,675.00 (collectively, the "Federal Tax Payments"):

   a. A $475,000.00 check dated January 18, 2011 drawn on the Debtor's operating account and deposited in the US Treasury on January 24, 2011;

   b. A $37,675.00 check dated April 14, 2011 drawn on the Debtor's operating account and deposited in the US Treasury on April 21, 2011; and

   c. A $127,000.00 check dated January 17, 2012 drawn on the Debtor's operating account and deposited in the US Treasury on January 20, 2012.

34. The Debtor also made the following payments from its operating account directly to the State between November 16, 2010 and January 23, 2012, in the aggregate amount of $64,470.00 (collectively, the "State Tax Payments," and with the Federal Tax Payments, the "Tax Payments"):

   a. A $31,470.00 check dated April 14, 2011, made payable to the "NC Department of Revenue (Gov)," which was drawn on the Debtor's operating account and deposited on April 26, 2011; and

   b. A $33,000.00 check dated January 17, 2012, made payable to the "NC Department of Revenue (Gov)," which was drawn on the Debtor's operating account and deposited on January 23, 2012.

35. The Tax Payments were estimated tax payments made in respect of the Rosellis' estimated personal income tax liability to the USA and the State for the tax years of 2010 and 2011.

36. The Debtor paid the Rosellis' tax liabilities with the mistaken belief that it was protecting its own supposed interests and not as a mere volunteer.

37. Because the Debtor paid the Rosellis' tax liabilities, it was equitably subrogated to the Rosellis' rights in any eventual refund of the Tax Payments.

### *E. Post-Confirmation, the Rosellis Filed Amended Tax Returns for the Debtor and Receive Refunds of Money Originally Paid from the Debtor's Operating Accounts*

38. Despite losing their interest in the Debtor on the Plan's effective date, the Rosellis filed amended state and federal tax returns on or around April 14, 2014, on the Debtor's behalf for the tax years of 2010 and 2011.

39. The Rosellis had no legal authority to file amended tax returns on behalf of the Debtor or the estate in April of 2014, as their interests in the Debtor were cancelled on May 2, 2013 (the Effective Date of the Plan).

40. Furthermore, the Rosellis did not notify the Plaintiff before filing the amended tax returns, and hired the accounting firm of Boatsman Gillmore Wagner to amend the Debtor's tax returns without authority under Section 327(a) of the Bankruptcy Code.

41. On information and belief, the Rosellis received refunds in amounts believed to exceed $650,000.00 as a result of improperly filing the Debtor's amended tax returns (the "Tax Refunds").

42. The Rosellis' 2010 and 2011 taxes totaling $704,145.00 were paid with the Debtor's funds; therefore, the Debtor was equitably subrogated to the Roselli's rights to any eventual refund(s).

43. The Debtor's equitable interest in any refund of the Tax Payments was property of the Debtor's estate pursuant to 11 U.S.C. § 541(a)(1).

44. The Tax Refunds are proceeds of property of the Debtor's estate and are therefore also property of the Debtor's estate pursuant to 11 U.S.C. § 541(a)(6).

45. Furthermore, the estate has avoidance, recovery and turnover claims against the USA and the State that were preserved under Sections 1.6, 1.22, 1.46, 3.3.2, and 7.2 of the Plan related to the Tax Payments and the proceeds thereof.

46. The Rosellis have not turned the Tax Refunds over to the Plaintiff despite demand.

**FIRST CLAIM FOR RELIEF**
Violation of Plan Injunction/Sanctions Pursuant to 11 U.S.C. §105

47. Plaintiff realleges all paragraphs of this complaint and incorporates them by reference as if fully set forth herein.

48. Pursuant to the Plan Injunction, the Rosellis were permanently enjoined "from and after the Effective Date, from: (a) commencing . . . in any manner any action or other proceeding of any kind on any such . . . Interest against . . . the Estate . . . ."

49. Pursuant to Article 1.41 of the Plan, the term "Estate" was defined as "[t]he bankruptcy estate of the Debtor, including all claims and interests in property that the Debtor owns, holds or otherwise acquires and shall include all Causes of Action."

50. Similarly, the Rosellis were permanently enjoined from "(e) pursuing any Claim released in the Modified Plan."

51. Notwithstanding the foregoing, the Rosellis violated the Plan Injunction by:

　　a. amending the Debtor's tax returns after the Plan was confirmed on account of their purported interest in the Debtor to obtain the Tax Refunds that were property of the estate, paid by the Debtor, and the subject of the estate's claims against the USA and the State; and

    b. seeking the allowance of a general unsecured claim against the estate in the amount of $861,446.91 that was released under Article 7.9 of the Plan.

52. The Rosellis had actual notice of the Plan, Confirmation Order, and Plan Injunction.

53. The Plan Injunction was in the Plaintiff's favor and intended to benefit the Plaintiff and the estate's creditors.

54. The Rosellis violated the Plan Injunction and had actual or constructive knowledge of such violations.

55. Plaintiff and the estate have been harmed by the Rosellis' actions, and have suffered actual damages in the amount of the Tax Refunds and all costs and fees incurred in objecting to the claim allowance motion.

56. Moreover, the Court has the inherent authority to sanction the Rosellis "when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

57. In addition to the foregoing, the Rosellis have engaged in bad faith litigation tactics in an attempt to deprive the estate's creditors of the benefit of their bargained-for consideration under the Plan and to hamper the implementation of the Plan and Confirmation Order. Such actions include:

    a. filing objections to proposed settlements of potential avoidance action claims being pursued by the Plaintiff for the benefit of the Debtor's creditors and arguing that the Plaintiff was not authorized to pursue such claims despite the unambiguous terms of Articles 1.6, 1.22, 1.46, 3.3.2, 7.2, 9.1, and 9.9 preserving such claims for the benefit of creditors;

    b. soliciting defendants in adversary proceedings initiated by the Plaintiff to enter into "Joint Interest Agreements," the express purpose of which was to actively assist these parties in defeating avoidance action claims preserved in Articles 1.6, 1.22, 1.46, 3.3.2, 7.2, 9.1, and 9.9 preserving such claims for the benefit of creditors;

    c. moving to dismiss the Plaintiff's complaint in the case captioned *The Finley Group v. Fifth Third Bank d/b/a Fifth Third Bank, Inc*. Adv. Proc. 14-3254;

    d. filing affidavits with the Court stating unequivocally that they never intended for claims to be pursued despite the unambiguous terms of Articles 1.6, 1.22, 1.46, 3.3.2, 7.2, 9.1, and 9.9 of the Plan to the contrary; and

    e. asserting management and control rights over the Debtor in violation of, among other provisions, Article 3.5 of the Plan when filing state and federal tax returns on behalf of the Debtor after the Plan's Effective Date.

58. As a result, the estate has incurred significant legal fees and costs in defending and objecting to the Rosellis' improper actions in amounts that the Plaintiff believes exceed $100,000.

## SECOND CLAIM FOR RELIEF
Turnover of Property of the Estate—Pursuant to 11 U.S.C. § 542

59. Plaintiff realleges all paragraphs of this complaint and incorporates them by reference as if fully set forth herein.

60. Articles 1.6, 1.22, 1.46, 3.3.2, 7.2, 9.1, and 9.9 of the Plan expressly preserved turnover rights under 11 U.S.C.§§ 542 and 543 for the Plaintiff to pursue to fund distributions to unsecured creditors.

61. The Tax Refunds, up to a total of $704,145.00, are property of the Debtor's estate and are funds that the Plaintiff could use to pay unsecured creditors in the Debtor's bankruptcy case.

62. The funds are not of inconsequential value or benefit to the estate.

63. As a result, the Rosellis should be required to turn over the Tax Refunds to the Plaintiff pursuant to 11 U.S.C. § 542. *See Gilliam v. Speier (In re KRSM Props.)*, 318 B.R. 712, 720 (B.A.P. 9th Cir. 2004) (holding "[i]t was not error to order the IRS and FTB to turn over the funds received from KRSM on account of estimated personal income taxes of KRSM's owners" and overruling the objections filed by the members of the limited liability company); *Unsecured Creditors Comm. v. Briggs (In re Santa Fe Med. Grp.)*, 2015 Bankr. LEXIS 4226, at *17 (Bankr. D.N.M. 2015)(entering an injunction prohibiting the limited liability company's owner from spending a refund of taxes paid with the debtor's funds).

### THIRD CLAIM FOR RELIEF
Conversion

64. Plaintiff realleges all paragraphs of this complaint and incorporates them by reference as if fully set forth herein.

65. The Tax Refunds were property of the Debtor's estate, and the estate was therefore the lawful owner of the Tax Refunds.

66. The Rosellis intentionally and unlawfully converted the Tax Refunds to their sole use and benefit and to the exclusion of the Plaintiff's rights to the funds.

67. The Rosellis' conversion of the estate's property was the proximate cause of injury to the estate in an exact amount to be proved during this Adversary Proceeding but believed to exceed $650,000.00.

## **FOURTH CLAIM FOR RELIEF**
Constructive Trust

68. Plaintiff realleges all paragraphs of this complaint and incorporates them as if fully set forth herein.

69. The Tax Refunds are property of the Debtor's estate.

70. The Rosellis currently possess the Tax Refunds in contravention to their duties to turnover property of the Debtor's estate to the Plaintiff.

71. The Rosellis obtained the Tax Refunds through conversion of the estate's property.

72. It would be inequitable for the Rosellis, rather than the estate, to retain the Tax Refunds since the taxes were paid with the Debtor's funds, the Debtor's creditors will not be paid in full in this case, and the Rosellis' retention of the Tax refunds violates the basic priority scheme of the Bankruptcy Code.

73. To remedy this inequity, the Court should impose a constructive trust, such that the Rosellis hold the Tax Refunds and the proceeds, profits and product of same in constructive trust for the benefit of the estate and its creditors.

WHEREFORE, Plaintiff respectfully prays the Court:

1. Enter a judgment against the Rosellis on Plaintiff's First Claim for Relief in an amount to be determined by the Court.

2. Enter a judgment against the Rosellis on Plaintiff's Second Claim for Relief in the amount of the Tax Refunds.

3. Enter a judgment against the Rosellis on Plaintiff's Third Claim for Relief in the amount of the Tax Refunds.

4. Enter a judgment against the Rosellis on Plaintiff's Fourth Claim for Relief and enter an order imposing a constructive trust in favor of the Plaintiff over the Tax Refunds held by the Rosellis.

5. Enter an award of punitive damages against the Rosellis.

6. Enter a judgment awarding the Plaintiff the costs incurred in pursuing this action, together with all interest, expenses and attorneys' fees to the extent permitted by applicable law.

7. For such other and further relief as the Court deems just and proper.

Dated: Charlotte, North Carolina
June 21, 2017

                                                       MOON WRIGHT AND HOUSTON, PLLC

                                                       */s/ Andrew T. Houston*
                                                     Andrew T. Houston (NC Bar No. 36208)
                                                     Caleb Brown (NC Bar No. 41131)
                                                     121 West Trade Street, Suite 1950
                                                     Charlotte, North Carolina 28202
                                                     Telephone: (704) 944-6560
                                                     Facsimile: (704) 944-0380
                                                     *Counsel for the Plaintiff / Liquidating Agent*