IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| In re: | |
| **REDF MARKETING, LLC,** | Chapter 11 |
| Debtor. | Case No: 12-32462 |
| **THE FINLEY GROUP,** Liquidating **Agent for REDF MARKETING, LLC,** | |
| Plaintiff, | |
| v. | Adversary Proceeding No.: 17-03063 |
| **DANIEL J. ROSELLI and SARA GARCES ROSELLI,** | |
| Defendants. | |

## MOTION FOR SANCTIONS

**MOON WRIGHT & HOUSTON, PLLC**

_____/s/ Andrew T. Houston_____
Travis W. Moon (Bar No. 3067)
Richard S. Wright (Bar No. 24622)
Andrew T. Houston (Bar No. 36208)
121 West Trade Street, Suite 1950
Charlotte, North Carolina 28202
Telephone:  (704) 944-6560
Facsimile:  (704) 944-0380
*Counsel for the Plaintiff / Liquidating Agent*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **REDF MARKETING, LLC,** | ) | Case No. 12-32462 |
| | ) | |
| Debtor. | ) | |

## MOTION FOR SANCTIONS

Now come The Finley Group, the liquidating agent for Redf Marketing, LLC and Moon Wright & Houston PLLC, and hereby move this Court pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure for the entry of an order sanctioning Daniel J. Roselli, Sara Garces Roselli, Bradley E. Pearce and Pearce Law PLLC.  In support of this motion, the movants respectfully show the Court as follows:

### I. JURISDICTION AND VENUE

1.      The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. § 1409(a).  The basis for the relief requested herein is Rule 9011 of the Federal Rules of Bankruptcy Procedure.

### II. BACKGROUND

*A.      Background Facts Regarding the Debtor and the Involuntary Petition.*

2.      Redf Marketing, LLC (the "Debtor") was a small, closely-held company, which operated an advertising and marketing agency located in Charlotte, North Carolina.

3.      Prior to its bankruptcy filing, the Debtor was owned by Daniel J. Roselli and Sara Garces Roselli (together, the "Rosellis"). Sara Roselli owned 51% of the Debtor's membership interests, and Dan Roselli owned 49% of the Debtor's membership interests.  Sara Roselli served

as the Debtor's manager between 2006 and 2013, and the Rosellis both served as officers and directors of the company during that time period.

4.      The Debtor, Dan Roselli and others were named as defendants in contentious bet-the-company litigation with Bridgetree, Inc. ("Bridgetree") regarding, among other things, the Debtor's theft and misappropriation of trade secrets.

5.      After obtaining a judgment against the Debtor of more than $4,000,000 for the theft of its trade secrets, Bridgetree filed an involuntary petition for relief against the Debtor under Chapter 7 of the Bankruptcy Code on October 12, 2012 (the "Petition Date").

6.      On October 29, 2012, the Court entered the order for relief and also converted the case to a proceeding under Chapter 11 of the Bankruptcy Code.

**B.      The Debtor's Retention of Moon Wright & Houston, PLLC.**

7.      Prior to the entry of the Bridgetree judgment, neither Moon Wright & Houston, PLLC ("MWH"), nor any of its attorneys, ever represented the Debtor, the Rosellis, or an entity owned by the Rosellis.  Nor had MWH or its attorneys even heard of the Debtor, the Rosellis or any of their affiliates.

8.      The Debtor engaged MWH to represent the Debtor in this bankruptcy case pursuant to the terms of a written engagement letter agreement dated August 15, 2012 (the "Engagement Agreement").  A true and correct copy of the Engagement Agreement is attached hereto as **Exhibit 1**.

9.      The Engagement Agreement provided in pertinent part the following:

a.      "**This letter is to confirm Red F Marketing's engagement of Moon Wright & Houston, PLLC (the "Firm") as legal counsel** in connection with the matters discussed below";

b. "You wish to engage **the Firm to represent Red F Marketing ("Red F") in connection with a potential chapter 11 case** to be filed in the United States Bankruptcy Court for the Western District of North Carolina";

c. "**Please note that the Firm's representation does not extend to the owners, employees, officers, directors, members, shareholders, managers, or subsidiaries of Red F. Nor does it extend to any guarantors of obligations that may be owed by Red F. Such persons or entities must secure separate counsel if they wish to have legal representation in this matter**."

*See* Ex. 1 (emphasis added).

10.    The Engagement Agreement was executed by Dan Roselli on behalf of the Debtor.

11.    October 25, 2012, Grier Furr & Crisp PA filed its notice of appearance on behalf of "Dan Roselli individually." [Doc. 17].  Erwin, Bishop Capitano & Moss, P.A. appeared in this case on behalf of Sara Garces Roselli and certain affiliates of the Rosellis.   The Court's docket reflects that both firms remain as counsel of record in this case as of the date of this motion.

C.    *The MWH Retention Application.*

12.    On November 12, 2012, the Debtor filed its application to employ MWH as counsel for the Debtor (the "Retention Application"). [Doc 41].   Among other things, the Retention Application provided that:

a. "**Redf Marketing, LLC (the "Debtor")**, the above-captioned debtor and debtor in possession, by this application (the "Application"), **hereby seeks authority to retain and employ the law firm of Moon Wright & Houston, PLLC ("MWH") as bankruptcy counsel to the Debtor in this chapter 11 case**";

     b.    "**MWH does not hold or represent any interest adverse to the Debtor's estate, and MWH is a "disinterested person" as that phrase is defined in section 101(14) of the Bankruptcy Code**" (¶ 10);

     c.    "To the best of the Debtor's knowledge…**MWH has not represented the Debtor's creditors, equity security holders, or any other parties in interest, or its respective attorneys, in any matter relating to the Debtor or its estate**" (¶ 11).

13.     The Retention Application was signed by Dan Roselli on behalf of the Debtor.

14.     The Retention Application was also supported by the Affidavit of Travis W. Moon [Doc. 41-1], an MWH partner, which provided among other things:

     a.    "Neither I, the Firm, nor any partner, counsel, or associate thereof, insofar as I have been able to ascertain, has any connection with the above-captioned debtor and debtor-in-possession (the "Debtor"), its creditors, or any other parties in interest herein" (¶ 2); and

     b.    "MWH is a 'disinterested person' as that term is defined in section 101(14) of the Bankruptcy Code" (¶ 3).

15.     On November 14, 2012, the Court entered an Order granting the Retention Application (the "Retention Order"). [Doc. 46]. Among other things, the Retention Order provided that: "…the attorneys at MWH (i) represent no interests adverse to this case with respect to the matters for which they are to be engaged, (ii) are disinterested persons as that term is defined under section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code…"

**D.**     ***Representation of the Rosellis During the Chapter 11 Case.***

16.     Contrary to their more recent allegations, the Rosellis were always individually represented by separate counsel during the bankruptcy case.

17.     For example, during the plan confirmation process Dan Roselli was deposed as the Rule 30(b)(6) designee for the Debtor on March 6, 2013.  The transcript clearly reflects that MWH appeared at the deposition on behalf of the Debtor and that Joe Grier appeared on behalf of Dan Roselli personally.   Attached hereto as **Exhibit 2** are excerpts from the deposition transcript.

18.     Likewise, Sara Roselli and the Rosellis' affiliated entities were represented by Dan Bishop during the bankruptcy case.

19.     For example, when Bridgetree served discovery on Sara Roselli and the related entities in the context of plan confirmation Mr. Bishop addressed coordinating the depositions with Bridgetree's counsel and raised objections to Bridgetree's discovery propounded to Sara Roselli and the related entities.  Attached hereto as **Exhibit 3** is a true and correct copy of the email from Dan Bishop to Glenn Thompson dated February 5, 2013.

20.     Similarly, when Bridgtree served document subpoenas on BB&T during the Chapter 11 case, BB&T requested the consent of the various affected parties to produce the information to Bridgetree.

21.     The email chain attached hereto as **Exhibit 4** plainly demonstrates that: (a) Joe Grier was representing Dan Roselli only, (b) MWH was representing the Debtor only, and (c) that Dan Bishop was representing Sara Roselli and the related entities.

22.      In pertinent part, Mr. Bishop's email provided:

Ashley, Sara Garces Roselli, Packard Place Properties LLC, Red Cedar Properties LLC, Customerstream LLC and Packard Place PBC, LLC all consent to the

> release of the documents once appropriately redacted, but I note that the objection
> of Dan Roselli to production of the financial statement and tax returns should be
> resolved prior to production of those items.

*See*, Ex. 4, Email from Dan Bishop to Ashley Edwards and others dated February 6, 2013.

23.     Moreover, the Rosellis were separately represented by counsel at key hearings before the bankruptcy court.  For example, at the confirmation hearing held on April 3, 2013, Dan Roselli was represented by Joe Grier and Sara Roselli was represented by Dan Bishop. Attached hereto as **Exhibit 5** are excerpts from the confirmation hearing transcript.

24.     The Court entered the Order Confirming Modified Plan on April 29, 2013 (the "Confirmation Order").  [Doc. 188].  Page 2 of the Confirmation Order reflects that the Rosellis were represented by Messrs. Grier and Bishop at the confirmation hearing.

**E.      The Court Approved MWH's Final Fee Application.**

25.     Pursuant to the modified plan and section 330 of the Bankruptcy Code, MWH was required to file a final fee application seeking final allowance of all fees for services rendered and expenses advanced on behalf of the Debtor.

26.     MWH filed a final fee application related to its representation of the Debtor on May 9, 2013 (the "Final Fee Application"). [Doc. 193].  The Final Fee Application sought interim and final approval of all fees and expenses of MWH as counsel to the Debtor covering the period from October 24, 2012 through May 9, 2012.  The Final Fee Application was served on the Rosellis' attorneys via the Court's electronic filing system.

27.     On May 28, 2013, the Court entered an Order approving MWH's final fee application (the "Final Fee Order"). [Doc. 196].  The Final Fee Order is a final order of this Court that is no longer subject to appeal.

**F.**     ***The Liquidating Agent's Post-Confirmation Retention of MWH.***

28.     The Liquidating Agent filed an application to employ MWH as counsel to the Liquidating Agent on July 24, 2013 (the "Second Retention Application"). [Doc. 220].

29.     The Second Retention Application was filed under Section 327(a) and provided:

    a.   "MWH was retained to represent the Debtor as its counsel in connection with this chapter 11 case pursuant to an Order entered by this Court on November 14, 2012" (¶ 4);

    b.   That MWH would represent the Liquidating Agent in "…the pursuit of avoidance actions, other claims in avoidance, recovery, and/or subordination, and all other actions described in the Disclosure Statement, the Confirmation Order, the Schedules, or the Plan"  (¶ 8);

    c.   "To the best of TFG's knowledge, and except as otherwise disclosed in the annexed affidavit of Travis W. Moon (the "Moon Affidavit"), MWH does not hold or represent any interest adverse to the Debtor's estate, and MWH is a "disinterested person" as that phrase is defined in section 101(14) of the Bankruptcy Code" (¶ 12);

    d.   "To the best of TFG's knowledge, other than disclosed herein and in the Moon Affidavit, MWH has not represented the Debtor's creditors, equity security holders, or any other parties in interest, or its respective attorneys, in any matter relating to the Debtor's estate" (¶ 13).

30.     In support of the Second Retention Application, the Liquidating Agent submitted the Affidavit of Travis W. Moon. [Doc. 227].   Among other things, Mr. Moon's affidavit provided:

a. "Neither I, the Firm, nor any partner, counsel, or associate thereof, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtor's estate" (¶ 2); and

b. "MWH is a 'disinterested person' as that term is defined in section 101(14)" (¶ 3).

31.     The Second Retention Application was filed on an *ex parte* basis but the Court entered an order setting the matter for hearing because of the "potential conflict of interest inherent in having former counsel for a DIP representing a Plan Liquidating Agent (effectively, its creditors)." [Doc. 226].

32.     On August 13 2013, the Court held a hearing on the Second Retention Application, and determined that no conflicts existed.

33.     As a result, the Court entered an order on August 21, 2013, approving the Second Retention Application (the "Post-Confirmation Retention Order"), which provided: "MWH does not hold or represent any interest adverse to the Debtor's estate, and MWH is a 'disinterested person' as that phrase is defined in section 101(14) of the Bankruptcy Code." [Doc. 233].

*G.     The Rosellis' Post-Confirmation Deposition Testimony.*

34.     The Rosellis have been deposed twice in the than four years since the plan was confirmed where they have given sworn testimony subject to penalty of perjury.  In particular, the Rosellis gave sworn testimony in the "Packard Place" adversary proceedings that irrefutably contradicts their current position that MWH represented them personally in this case.

35.     On July 11, 2016, Sara Roselli testified under oath that attorney Joe Grier represented Mr. Roselli and that attorney Dan Bishop represented her during the confirmation process (Ex. 6, p. 137:17-137:24).  Attached hereto as **Exhibit 6** are excerpts from Sara Roselli's deposition.  Mr. Pearce represented the Rosellis at this deposition.

36.   Dan Roselli was deposed in the same adversary proceeding the following day, where he testified subject to penalty of perjury that he was represented by Joe Grier, that the Debtor was represented by MWH, and that Sara Roselli was represented by Dan Bishop. Attached hereto as **Exhibit 7** are excerpts from Dan Roselli's deposition transcript dated July 12, 2016.

37.   Specifically, Mr. Roselli stated the following subject to penalty of perjury: "[w]ow, there were a lot of lawyers involved. So Joe Grier was involved on behalf personally, Moon Wright & Houston was involved on behalf of Redf.  I believe Sara had used Dan Bishop a little bit to help with that…" (Ex. 7, p. 12:8-12:14).

38.   Dan Roselli reiterated on many occasions during the deposition that the Debtor was represented by MWH while he was personally represented by Joe Grier.  (Ex. 7, pp. 47:7-47:10, 66:20-66:22, and 139:7-139:12).

39.   Mr. Pearce represented Dan Roselli at the July 12, 2016 deposition.

40.   Mr. Pearce has also sent correspondence to MWH where he acknowledged that MWH never represented the Rosellis. In a letter sent to Mr. Houston on June 5, 2015, Mr. Pearce stated, "**I realize that you and Moon Wright & Houston represented Redf, not Mr. Roselli or Ms. Garces.**" Attached hereto as **Exhibit 8** is a true and correct copy of the Mr. Pearce's letter dated June 5, 2015.

## H.   *Complaint filed by the Liquidating Agent Against the Rosellis.*

41.   On June 21, 2017, the Liquidating Agent commenced an action against the Rosellis captioned *The Finley Group v. Daniel J. Roselli et al.*, Adv. Pro. No. 17-3063.  MWH filed the Complaint on behalf of The Finley Group.  Because Mr. Pearce's June 5, 2015 letter contained threats against MWH for its allegedly "unethical" behavior in representing the

Liquidating Agent, the firm consulted with the North Carolina State Bar before filing the Complaint and obtained an opinion confirming the propriety of its actions.

42.      In its lawsuit, The Finley Group seeks damages from the Rosellis based on actions they have taken from April 14, 2014 forward (approximately 1 year after the plan was confirmed), which include: (a) amending the Debtor's state and federal tax returns for the purpose of obtaining tax refunds believed to exceed $650,000 (which taxes were paid by the Debtor in the first instance), and (b) active interference with the confirmed plan and confirmation order designed to deprive creditors of the benefits they received in the plan (such as actively seeking to dismiss claims that were preserved in the plan, and pursuing claims that the Rosellis expressly waived).

43.      The Complaint asserts three (3) substantive causes of action: (1) violation of the plan injunction/sanctions pursuant to 11 U.S.C. § 105, (2) turnover under 11 U.S.C. § 542, and (3) conversion.

*I.*      *Post-Complaint Actions by the Rosellis and their Counsel.*

44.      The Court will recall that on June 23, 2017, the day after the Complaint was filed, Mr. Pearce contacted chambers to discuss the "resulting publicity" and an ongoing mediation. The "publicity" complained of by Mr. Pearce and his clients consisted solely of comments *Mr. Pearce* made to the Charlotte Observer criticizing the Liquidating Agent.[1]  Mr. Pearce did *not* mention to the Charlotte Observer, however, that he had informed the Court just two months earlier in April 2017 that the Rosellis were trying to refinance the Packard Place loan in order to settle the Liquidating Agent's claims against them.  Attached hereto as **Exhibit 9** is a true and correct copy of the referenced article.

---

[1] The article can be found at: http://www.charlotteobserver.com/news/business/article157830359.html.

45.     On the June 23 call with the Court requested by Mr. Pearce, he also made a number of statements that are particularly telling about the Rosellis' motivations in filing the disqualification motion.  Mr. Pearce specifically informed the Court that, "all h--- was going to break loose," and that the Rosellis had too much "emotional scarring" and "hurt feelings" to attempt to resolve this case.[2]

46.     Following Mr. Pearce's statements to the Court, on Friday July 7, 2017, Mr. Roselli made a number of personal attacks against MWH and its attorneys in an article published in the Charlotte Business Journal.  Attached hereto as **Exhibit 10** is a true and correct copy of the Charlotte Business Journal article.[3]

47.      For instance, Mr. Roselli said "We are deeply concerned about the ethics of Mr. Houston and his firm given the actions that he has taken in this case. Our complaint to the bar association will more fully outline these concerns."  *See*, Ex. 10.

48.     Moreover, the article provided that:  "Roselli contends Houston has generated legal fees without returning money to creditors in the bankruptcy case."  *Id.*[4]

***J.      The Disqualification Motions***

49.     On Monday July 10, 2017, the Rosellis filed identical motions to disqualify MWH and its attorneys in the adversary proceeding and in the base case.  The motions were signed by Mr. Pearce of Pearce Law PLLC.

50.     In the disqualification motions, the Rosellis effectively argue that: (a) MWH and its attorneys should be disqualified because of a conflict of interest with the Rosellis, and (b)

---

[2] It is hypocritical in the extreme for the Rosellis to blame the Liquidating Agent or its counsel for their supposed "emotional scarring" or "hurt feelings" when: (a) a federal jury and The Honorable Frank D. Whitney found that the Rosellis' companies intentionally stole trade secrets and entered a 42 page Order and Permanent Injunction against them, and (b) all of the litigation in this bankruptcy case has been related to the Rosellis' attempts to obtain personal benefits at the expense of the Debtor's creditors, who likely will only receive a fraction of their allowed claims.
[3] A link to the article can be found at: https://www.bizjournals.com/charlotte/news/2017/07/07/dan-roselli-faces-another-lawsuit-over-bankruptcy.html.
[4] The Liquidating Agent obviously disputes that Mr. Roselli places the well-being of the Debtor's creditors ahead of his own.

MWH and its attorneys must be disqualified because they are necessary witnesses in the adversary proceeding.

51.     The disqualification motions do not cite any legal authority governing the employment and retention of bankruptcy professionals under 11 U.S.C. § 327.  Similarly, the disqualification motions ignore the effect of all the prior retention applications and orders approving of MWH's representation of the Debtor, and then the Liquidating Agent, in this case.

52.     Nor do the disqualification motions mention the Engagement Agreement, the sworn deposition testimony of the Rosellis, or Mr. Pearce's prior admissions that MWH never represented the Rosellis.

53.     Further, the disqualification motions continue to assert personal attacks against MWH and its attorneys.  For example, the disqualification motions falsely accuse MWH and its attorneys of engaging in impermissible conflicts of interest against "former clients."

54.     The disqualification motions baselessly accuse MWH and its attorneys of trying to "extort" a settlement from the Rosellis, and state that MWH has engaged in "criminal extortion."  The Rosellis and their counsel argue that, based on these alleged crimes, MWH and its attorneys must be disqualified for violating Rule 8.4 of the North Carolina Rules of Professional Conduct (governing criminal misconduct).

55.     All of these allegations are frivolous.

56.     The Court previously held a status conference on July 11, 2017 (the day after the disqualification motions were filed).  During this conference, Mr. Pearce immediately asserted that a forthcoming motion to dismiss from the Rosellis would render the motions to disqualify moot.  Mr. Pearce's statements, made on the very heels of his filing of the disqualification

motions, strongly suggest that they are lodged merely as a litigation tactic, rather than as a serious assertion of any wrongdoing on the part of the Liquidating Agent or her counsel.[5]

### K.   The Court has previously admonished Mr. Pearce for making personal attacks against other professionals in papers filed in the docket.

57.   The Court previously cautioned the parties against making *ad hominem* attacks against one another in this case.  In addition, Mr. Pearce was previously admonished by Judge Hodges on the record for leveling baseless personal attacks on other professionals in the case of *In re: Pacific Avenue, LLC*, Case No. 10-32093.

58.   Mr. Pearce represented a party known as Blue Air 2010, LLC in the Pacific Avenue case.  There, Mr. Pearce signed a pleading subject to Rule 11 that contained a number of frivolous allegations about the trustee in an attempt to intimidate her from seeking a commission under Section 326 of the Bankruptcy Code.

59.   In rejecting the arguments advanced by Mr. Pearce in that case, Judge Hodges specifically found that, "[t]he allegations in the Blue Air Response are false and there is ample evidence in the record to support that conclusion."  *See* Order dated October 17, 2012, p. 4 ¶ 13, Case No. 10-32093, Docket No. 1176.

60.   Judge Hodges went on to say Blue Air's position was "misguided and erroneous" but that he would not enter an award of sanctions "at this time." *Id.* at ¶ 18.[6]

---

[5] Mr. Pearce also stated at this status conference that he would need to conduct discovery regarding the allegations in the disqualification motions.  However, as of the date of the service of this Motion upon Mr. Pearce, he has served no such discovery on the Liquidating Agent.  Again, this indicates the disqualification motions were purely tactical devices.

[6] In the Pacific Avenue case, no motion for Rule 11 sanctions had been served as required by the "safe harbor" provisions of Bankruptcy Rule 9011(c)(1)(A).  This was because the offending pleading had been filed only a few days before the commission hearing.

## III. RELIEF REQUESTED AND RELATED AUTHORITY

61.     Rule 9011 of the Federal Rules of Bankruptcy Procedure govern representations made to the Court and related sanctions against parties and their attorneys.  In pertinent part, Rule 9011(b) provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances…(*1*) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (*2*) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and] (*3*) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery…

Fed. R. Bankr. P. 9011(b)(1)-(3).

62.     If it is determined that Rule 9011(b) has been violated, then the Court can "impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Fed. R. Bankr. P. 9011(c).

63.     Rule 9011(c) governs the nature of such sanctions and provides:

> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated…the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Fed. R. Bankr. P. 9011(c).

64.     When evaluating violations of Bankruptcy Rule 9011, "courts may look to cases that interpret Federal Rule of Civil Procedure 11." *McGahren v. First Citizens Bank & Trust Co. (In re Weiss),* 111 F.3d 1159, 1170 (4th Cir. 1997).  Further, "[i]n determining whether a

signatory violated Rule 11, the court must apply an objective standard of reasonableness." *Id*.

Indeed, "[t]he prefiling investigation must appear objectively reasonable." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991).

65.     As demonstrated below, the Rosellis and Mr. Pearce have violated every prong of Bankruptcy Rule 9011(b).  The Court should therefore enter an appropriate sanction against them to deter repetition of such improvident conduct.  The movants address each issue in turn below.

### A.     *The Disqualification Motions were filed for an Improper Purpose*

66.     In filing the disqualification motions, Mr. Pearce certified that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … (*1*)  it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Bankr. P. 9011(b)(1).

67.     It is fundamental that "[a]busive language toward opposing counsel has no place in documents filed with our courts; the filing of a document containing such language is one form of harassment prohibited by Rule 11." *Coats v. Pierre*, 890 F.2d 728, 734 (5th Cir. 1989).

68.     Indeed, including "unsubstantiated, vituperative statements with regard to the character and professional ethics of [opposing counsel] plainly constitutes a violation of Rule 11." *Kahre v. United States*, 2003 U.S. Dist. LEXIS 6948, *17 (D. Nev. 2003).

69.     A paper is filed for an "improper purpose" in violation of Rule 9011(b)(1) where it is filed to embarrass a party or opposing counsel.  *See Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 807 (5th Cir. 2003).  Moreover, making statements to the media is "arguably the best evidence of [an] improper purpose."  *Id*. Indeed, a related media play "simply constitutes objective evidence of that improper purpose." *Id*. at 808.

70.     In the present case, it is clear that the disqualification motions were filed for the improper purpose of threatening and harassing MWH and its attorneys.

71.     In the first instance, Mr. Pearce informed the Court prior to filing the motions that his clients needed to take action to rectify their "emotional scarring" and "hurt feelings."  It is plainly improper to use the judicial process as a means to redress personal grievances with a party or an opposing attorney.  Anger, embarrassment, or other "hurt feelings" are insufficient bases to impose upon the Court's time or the time of other parties.  Such tactics needlessly increase the cost of litigation without addressing the merits of the underlying action.

72.     Secondly, the disqualification motions make a number of vituperative comments directed at MWH's attorneys, such as by alleging that the have engaged in "misconduct" and "criminal extortion," as well as serious ethical violations.  These statements are certainly false.  But putting aside their falsity, they are also improper simply because "[a]busive language toward opposing counsel has no place in documents filed with our courts; the filing of a document containing such language is one form of harassment prohibited by Rule 11." *Coats*, 890 F.2d at 734.

73.     The Rosellis' improper motives for filing their disqualification motions are also evidenced by a number of additional factors.

74.     For instance, Mr. Roselli made a number of impertinent statements to the media singling out one attorney at MWH.  Indeed, he said that he was "deeply concerned about the ethics of Mr. Houston and his firm given the actions that he has taken in this case," and that he was concerned about the legal fees and returns to creditors.  These gratuitous comments to the media served no other purpose than to impugn the integrity of MWH and its employees.  Mr. Roselli's comments were vitriolic and constitute impermissible harassment.  As stated by the

Fifth Circuit Court of Appeals, such statements to the media are "arguably the best evidence of [an] improper purpose." *Whitehead*, 332 F.3d at 808.

75.     Notably, Mr. Pearce's actions immediately after the filing of the disqualification motions further evidence that they were submitted solely for tactical effect.  Mr. Pearce had no intention of pursuing the disqualification motions.  The day after filing the motions, Mr. Pearce immediately forecasted that the Court would never have to hear them, because they would be moot after the Court considered a forthcoming motion to dismiss.  Likewise, after claiming that he would need to conduct discovery on the disqualification motion, no such requests have been received as of the service of this motion.

76.     These actions, or inactions, demonstrate that neither Mr. Pearce nor the Rosellis had a sincere intent to pursue the disqualification motions.  Filing a paper designed to impugn opposing counsel in an apparent effort to placate an angry client is not a proper purpose.  Rather, as the Fourth Circuit has held, "filing a motion or pleading without a sincere intent to pursue it will garner sanctions."  *In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990).

77.     Accordingly, Mr. Pearce and the Rosellis violated Rule 9011(b)(1) by filing the disqualification motions.

**B      *The Disqualification Motions are Not Warranted by Existing Law***

78.     By filing the disqualification motions, Mr. Pearce is certifying to the Court that the "legal contentions therein are warranted by existing law." Fed. R. Bankr. P. 9011(b)(2).

79.     As stated by our District Court,

> A legal contention is not warranted by existing law if it is based on legal theories that are plainly foreclosed by well-established legal principles and authoritative precedent…**<u>A legal contention that is made in spite of the obvious preclusive effect of a judgment in prior litigation is not warranted by existing law</u>**.

*Wahler v. Countrywide Home Loans, Inc.*, 2006 U.S. Dist. LEXIS 86413, *19 (W.D.N.C. June 14, 2006).

80.     Moreover, sanctions are proper under Rule 9011(b)(2) where a party's arguments are foreclosed by the "law of the case" doctrine. *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995)(holding "the demand for such damages in the supplemental complaint was frivolous because it was barred by the law of the case"). *See, also*, 10 *Collier on Bankruptcy* ¶ 9011.04 [6][a] (16th 2017)("[s]anctions may be imposed for asserting claims that have been barred by the law of the case.").

81.     In the present case, the disqualification motions are not supported by existing law for multiple reasons.

### 1. The Rosellis' Assertions of Impermissible Conflicts are Barred by the Doctrine of Res Judicata.

82.     *Res judicata* bars a party from attempting to litigate issues that have been or could have been litigated in a prior proceeding. *Pueschel v. United States*, 369 F.3d 345, 355-356 (4th Cir. 2004) ("[P]arties may be precluded from raising claims or issues that they could have or should have raised . . . ." at the prior proceeding).

83.     In the context of bankruptcy fee and retention litigation, "a final fee order is a bar to any claim that was or could have been raised at the time the final fee application is considered." *AASI Creditor Liquidating Trust v. Raymond James & Assocs. (In re All Am. Semiconductor, Inc.)*, 427 B.R. 559, 568 (Bankr. S.D. Fla. 2010).

84.     To establish that a claim is barred by *res judicata*, the party invoking the doctrine must show: (1) a previous final judgment on the merits, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *Union Carbide Corp. v. Richards*, 721 F.3d 307, 314-315 (4th Cir. 2013). By barring successive

litigation of the same claims by the same parties in different proceedings, "res judicata . . .

encourages reliance on judicial decisions, bars vexations litigation, and frees the courts to resolve

other disputes." *Id*. at 354 (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).

85.     All three prongs of *res judicata* are satisfied in this case.

86.     First, *res judicata* applies where "the prior judgment was final and on the merits,

and rendered by a court of competent jurisdiction in accordance with the requirements of due

process; . . ." *First Union Commer. Corp. v. Nelson, Mullins, Riley, & Scarbrough (In re Varat)*,

81 F.3d 1310, 1315 (4th Cir. 1996).

87.     In the present case, there are a number of final orders that bar the Rosellis from

asserting that MWH represented them in this case.  First, the Retention Order specifically found

that MWH did not hold or represent and adverse interest and that they were "disinterested

persons as that term is defined under section 101(14)."  This order was entered on November 14,

2012.

88.     Similarly, the Court also approved MWH's final fee application related to its

representation of the Debtor.  The Final Fee Order was entered on May 28, 2013.

89.     Likewise, the Court approved MWH's representation of the Liquidating Agent

after a hearing to address any possible conflicts.  The Court approved MWH's representation of

the Liquidating Agent and again found that MWH did not hold or represent and interest adverse

to the estate and that MWH was disinterested.  This order was entered on August 21, 2013.

90.     All of these orders are final orders of this Court that are no longer subject to

appeal.

91.     Second, there is an "identity of the cause of action" whenever the claims "'arise

out of the same transaction or series of transactions or the same core of operative facts.'"

*Union Carbide Corp.*, 721 F.3d at 315.

92.     The Fourth Circuit addressed the "identity of the cause of action" prong in the

context of a final fee application under Section 330 of the Bankruptcy Code in *Grausz v.

Englander*, 321 F.3d 467 (4th Cir. 2003).

93.     In *Grausz*, the Fourth Circuit held that the approval of a final fee application

precludes re-litigating issues that were or could have been raised in the context of the final fee

application.  Specifically, the Fourth Circuit held as follows:

> The fee application proceeding necessarily included an inquiry by the bankruptcy
> court into the quality of professional services rendered by the Linowes firm. The
> court was required to 'consider the nature, the extent, and the value of such
> services' before awarding fees. 11 U.S.C. § 330(a)(3). *See also Iannochino*, 242
> F.3d at 47; *Intelogic*, 200 F.3d at 387. By granting the Linowes firm's second and
> final fee application, the bankruptcy court impliedly found that the firm's services
> were acceptable throughout its representation of [the Debtor].

*Grausz*, 321 F.3d at 473.

94.     Approval of a final fee application under Section 330 obviously also includes an

express or implied determination that the estate professional is free of conflicts, since

employment under Section 327 is a condition precedent to the allowance of a final fee

application under Section 330.  *See* 11 U.S.C. § 330(a)(1)(illustrating that a professional must be

employed under Section 327 to be compensated under section 330).

95.     Accordingly, when this Court approved MWH's final fee application it

simultaneously found that "that the firm's services were acceptable throughout its representation

of [the Debtor]." *Grausz,* 321 F.3d at 473.  This determination necessarily included findings that

MWH was free from conflicts, that it did not hold or represent interests adverse to the estate, and

that it was "disinterested." Such findings are conditions precedent to retention under 11 U.S.C.§ 327(a) and allowance of compensation under 11 U.S.C.§ 330(a).

96.     Accordingly, the Rosellis are foreclosed from asserting, *ex post facto*, that MWH or its attorneys represented them in this case.

97.     The final element of *res judicata* is satisfied here because there is also an identity of the parties.

98.     "A party, for the purposes of former adjudication, includes 'all who are directly interested in the subject matter and who have a right to make defense, control the proceedings, examine and cross-examine witnesses and appeal from the judgment if an appeal lies.'" *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1550-1551 (11th Cir. 1990) (quoting 1 A. Freeman, A Treatise of the Law of Judgments § 430, at 936-37 (5th Ed. 1925)).

99.     Section 1109 of the Bankruptcy Code defines parties in interest in a Chapter 11 case and provides that "…a creditor, and equity security holder…" and other parties in interest have the right to be heard.  11 U.S.C. § 1109(b).

100.    It is beyond question that the Rosellis were parties in the context of the final fee application.  The Rosellis were listed as creditors in this case and they were the Debtor's equity security holders.  They were also served with all of these motions, and both were separately represented by skilled, excellent counsel during the Chapter 11 case.  Accordingly, the Rosellis had the right to object to the final fee application and to appeal the final fee order.  They did neither, and their belated attempt to assert that MWH represented them in the bankruptcy case is barred by the doctrine of *res judicata*.

101.    The Rosellis' baseless arguments to the contrary violate Bankruptcy Rule 9011(b)(2).

### 2.   *The Rosellis Arguments are Foreclosed by The Law of the Case Doctrine*

102.   The law of the case doctrine also bars the Rosellis from asserting that MWH represented them in this bankruptcy case.

103.   The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-816 (1988)).

104.   The law of the case doctrine precludes courts from revisiting issues previously decided by the Court. *United States v. Gambill*, 554 Fed. Appx. 168, 169 (4th Cir. 2014) (holding that the court was precluded from reconsidering issues it had decided in previous appeals of orders entered in the case).

105.   Here, the Court has correctly determined on multiple occasions that MWH did not represent the Rosellis.  It did so when it approved: (a) the Retention Application, (b) the Final Fee Application, and (c) the Post-Confirmation Retention Application.  In connection with each matter, the Court determined that MWH was free from conflicts, that it did not hold or represent interests adverse to the estate, and that it was "disinterested," again, because such findings are conditions precedent to retention under 11 U.S.C.§ 327(a) and allowance of compensation under 11 U.S.C.§ 330(a).

106.   The Rosellis and Mr. Pearce are prohibited from arguing otherwise under the law of the case doctrine.

107.   Accordingly, the disqualification motions thus violate Bankruptcy Rule 9011(b)(2) for this additional reason.

### 3. *The Motions to Disqualify Disregard Basic Rules Governing Organizations as Clients.*

108.    In addition to the fact that the Rosellis fail to ever address the basic statutory scheme for retention of bankruptcy court professionals in the motions to disqualify, their arguments also ignore the basic rules governing an attorney's representation of an organizational client under North Carolina law.

109.    The Rosellis argue in many sections of the disqualification motions that because Mr. Houston spoke to Sara Roselli as the manager of the Debtor, that he was simultaneously representing her in her personal capacity.  This is a frivolous legal argument.

110.    The North Carolina Rules of Professional Conduct define who a corporate attorney represents, and provide that "[**a] lawyer employed or retained by an organization represents the organization** acting through its duly authorized constituents." N.C. R. Prof. C. 1.13(a) (emphasis added).

111.    Rule 1.13 and its official comments make it very clear that the *organization* is the client, *not* its constituents.  For example, Comment 2 to Rule 1.13 provides:

> When one of the constituents of an organizational client communicates with the organization's lawyer in that person's organizational capacity, the communication is protected by Rule 1.6. Thus, by way of example, if an organizational client requests its lawyer to investigate allegations of wrongdoing, interviews made in the course of that investigation between the lawyer and the client's employees or other constituents are covered by Rule 1.6. **This does not mean, however, that constituents of an organizational client are the clients of the lawyer.**

N.C. R. Prof. C. 1.13(a), Comment 2 (emphasis added).

112.    Accordingly, the Rosellis' arguments on this point constitute frivolous generalizations that violate Rule 9011(b)(2).

### 4. *The Rosellis' Attorney-Witness Arguments are Frivolous.*

113.    Next, the Rosellis' attempt to convince the Court that MWH cannot represent the Liquidating Agent because its attorneys are necessary witnesses in the trial of this action.  The analysis of this point begins with Rule 3.7 of the North Carolina Rules of Professional Conduct.

114.    Rule 3.7 provides:

[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

N.C.R. of Prof. Conduct 3.7(a).

115.    A witness's "testimony is 'necessary' within the meaning of the rule when it is relevant, material, **and unobtainable by other means**." *State v. Rogers*, 219 N.C. App. 296, 304, 725 S.E.2d 342, 348 (citing N.C. Bar, 2011 Formal Ethics Opinion 1), *disc. review denied*, 366 N.C. 232, 731 S.E.2d 171 (2012) (emphasis added).

116.    Accordingly, a "necessary" witness is not the best witness or a party's desired witness, but rather the **only** witness that can testify to information that is relevant and material to the dispute.  *State v. Smith*, 749 S.E.2d 507, 510-11 (N.C. Ct. App. 2013) (holding "[w]e further observe that, to the extent Lay's testimony  on either point was relevant and material, it most certainly was not 'unobtainable by other means'").

117.    Furthermore, under Rule 601 of the Federal Rules of Evidence "a witness may testify only if evidence is introduced to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

118.    In the Roselli's disqualification motion, they fail to identify any fact of consequence in the adversary proceeding to which MWH or its attorneys: (a) have personal knowledge, or (b) are the only witnesses.

MWH: 10116.003; 00017740.2

119.    As discussed above, the allegations in the complaint address actions that the Rosellis took years after the plan was confirmed starting with the amendment of Redf's tax returns in April 14, 2014.

120.    Neither MWH nor any of its attorneys have any personal knowledge of these amendments, which occurred in April 2014.  Moreover, even if the Court would find that they did, MWH and its attorneys are not the only witnesses.

121.    The Rosellis are witnesses to these transactions.  So are the accountants that prepared the returns, and the IRS employees who reviewed them.  Upon information and belief, the tax returns were prepared by the accounting firm of Boatsman Gillmore Wagner.  Upon further information and belief, Anne Bradley (the Debtor's former bookkeeper/accountant) may also be a witness to the April 2014 tax amendments.

122.    Similarly, MWH and its attorneys do not have personal knowledge of the Rosellis' actions that give rise to the other allegations of the complaint regarding the Rosellis' entrance into joint interest agreements, their filing of motions to dismiss the Liquidating Agent's complaints, and their efforts to enforce claims against the estate.  Any knowledge that MWH or its attorneys have regarding these matters is based on filings by the Rosellis, review of the related documents, and interviewing related parties.  In other words, MWH's familiarity with these transactions is based on the applicable docket and the testimony of others, not on personal knowledge.

123.    Even if MWH or its attorneys had personal knowledge of any of these matters, they would not be the *only* competent witnesses.  The Rosellis are witnesses.  Mr. Pearce is a witness.  All of the other parties to the joint interest agreements and their attorneys are witness.

And every other creditor, attorney, or other party in interest that received filings in this case could be a witness to the same facts.

124.    Accordingly, the Roselli's argument that MWH and its attorneys are necessary witnesses is also frivolous and violates Rule 9011(b)(2).

## C.    *The Allegations in the Motion have no Evidentiary Support.*

125.    By filing the disqualification motions, Mr. Pearce is certifying to the Court that "after an inquiry reasonable under the circumstances…(*3*) the allegations and other factual contentions have evidentiary support." Fed. R. Bankr. P. 9011(b)(3).

126.    Before filing a motion with the Court, "an attorney must conduct a reasonable investigation of the factual bases underlying the claim." *Chaplin v. Du Pont Advance Fiber Sys.*, 124 Fed. Appx. 771, 774 (4th Cir. 2005). "When there is no factual basis for a particular claim, the attorney has violated Rule 11(b)(3)." *Id.* Further, "[b]lind reliance on the client is seldom a sufficient inquiry." *In re Kunstler*, 914 F.2d 505, 514 (4th Cir. 1990).

127.    An attorney also violates Rule 11 when he or she makes serious, unsubstantiated allegations of misconduct and criminal behavior on the part of opposing counsel:

> When making serious charges of unprofessional and criminal conduct against [opposing counsel] in pleadings filed with the Court, the certitude of suspicion alone is not enough. Exasperation and frustration may serve as explanations, but not acceptable excuses. Rule 11 demands objectively reasonable conduct, including a reasonable inquiry into the facts. In the present case, counsel for Nault have failed to demonstrate that their conduct met these threshold requirements.

*Nault's Auto. Sales, Inc. v. American Honda Motor Co., Acura Auto. Div.*, 148 F.R.D. 25, 37 (D.N.H. Mar. 31, 1993).

128.    Similarly, counsel is properly sanctioned under 28 U.S.C. § 1927 and Rule 11 for filing a motion to disqualify where the attorney fails to make reasonable inquiry into the facts, despite receiving information that is contrary to the allegations in the motion, and where the

motion is interposed to harass opposing counsel, to cause unnecessary delay, or to needlessly increase the cost of litigation. *See*, *e.g., Wold v. Minerals Engineering Co*., 575 F. Supp. 166, 167 (D. Colo. 1983).

129.    The objective evidence in this case demonstrates that Mr. Pearce has filed the motions to disqualify counsel when he knows that the factual allegations are false in violation of Rule 11.

130.    For example, Mr. Pearce asserts that MWH and its attorneys represented the Rosellis personally in connection with this bankruptcy case.  These allegations are demonstrably false, as evidenced by:

    a.    Dan Roselli's sworn deposition testimony illustrating that MWH represented the Debtor, Joe Grier represented Dan Roselli personally, and Dan Bishop represented Sara Roselli.  Mr. Pearce personally attended this deposition;

    b.    Sara Roselli's sworn deposition testimony illustrating that MWH represented the Debtor while Dan Bishop represented her individually.  Mr. Pearce personally attended this deposition;

    c.    Mr. Pearce's letter to MWH dated June 5, 2015 June 5, 2015, which stated "I realize that you and Moon Wright & Houston represented Redf, not Mr. Roselli or Ms. Garces";

    d.    The docket in this case, which shows that as of this date Joe Grier represents Dan Roselli and Dan Bishop represents Sara Roselli;

    e.    The Confirmation Order, which plainly states that Joe Grier represented Dan Roselli and Dan Bishop represented Sara Roselli. Mr. Pearce cites to the Confirmation Order in paragraph 6 of each motion to disqualify; and

  f. The transcript of the confirmation hearing, which states that Joe Grier represented Dan Roselli and that Dan Bishop represented Sara Roselli. Mr. Pearce cited to the hearing transcript on page 6 of the brief he filed supporting a motion to dismiss the Liquidating Agent's complaint filed in the adversary proceeding captioned *The Finley Group v. Fifth Third Bank et al*, Adv. Pro. No. 14-3254 (Docket Entry 34).

131. Put simply, Mr. Pearce filed the disqualification motions despite his own clients' sworn testimony (given in his presence), his own admissions, and the undeniable record in this case.

132. Advancing such inapposite factual positions in the face of this evidence is a brazen violation of Rule 9011(b)(3).

**D. The Court should award Appropriate Sanctions.**

133. Where the Court determines that Rule 9011(b) has been violated, the Court may "impose an appropriate sanction upon the attorneys, law firms, or parties that have violated" the rule.  Fed. R. Civ. P. 9011(c)(1).

134. Rule 9011(c) governs the nature of sanctions and provides:

A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated…**the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation**.

Fed. R. Bankr. P. 9011(c)(2) (emphasis added) (illustrating that a court may award monetary and nonmonetary sanctions against parties and their attorneys).

135.    The Fourth Circuit has stated that, when calculating an appropriate sanction, the "court should bear in mind that the purposes of Rule 11 include 'compensating the victims of the rule 11 violation, as well as punishing present litigation abuse, streamlining court dockets and facilitating court management.'" *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373-74 (4th Cir. 1991).

136.    In determining an appropriate monetary sanction, the Court should consider the following factors: "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation." *Id*.

137.    Other courts also hold that a court weighing a Rule 11 sanction should "consider past conduct in determining both whether sanctions should be imposed and the nature of any sanctions to be imposed." *Kramer v. Tribe*, 156 F.R.D. 96, 104 (D.N.J. July 14, 1994).

138.    Further, Rule 11 contemplates that the Court may consider "nonmonetary" sanctions against a party, "such as dismissal of a claim, **preclusion of a defense**, or preparation of amended pleadings." 10 *Collier on Bankruptcy* ¶ 9011.07[3][a] (16th ed. 2017) (emphasis added).

139.    The Court can consider nonmonetary sanctions against an attorney such as: reprimanding the attorney, removing the attorney from the case, suspending the attorney from practicing before the Court, or publication of an opinion discussing the attorney's conduct.  10 *Collier on Bankruptcy* ¶ 9011.08[2] (16th ed. 2017).

140.    In the present case, the Court should weigh the factors delineated in the Fourth Circuit's *Brubaker* case, *supra*, and award appropriate monetary and nonmonetary against the Rosellis, Mr. Pearce, and Pearce Law PLLC.

141.   An award of sanctions is particularly appropriate against Mr. Pearce given the prior admonishments from Judge Hodges in the Pacific Avenue case as well as this Court's warning that *ad hominem* attacks are inappropriate.

142.   The movants recommend that such sanctions include, without limitation:

a.   An award of all legal fees and costs incurred in connection with opposing the motions to disqualify;

b.   An award of all damages sustained by the movants consisting of lost wages and revenues in connection with opposing the motions to disqualify;

c.   The entry of an order precluding the Rosellis from raising any affirmative defenses (which still allows the Rosellis to defend themselves on the merits of the underlying complaint); and

d.   Any additional nonmonetary relief that the Court believes is necessary or appropriate to deter the Rosellis, Mr. Pearce and future litigants from violating Bankruptcy Rule 9011.

## IV. CONCLUSION

143.   Based on the foregoing, the movants submit that the Rosellis, Mr. Pearce and Pearce Law PLLC have violated every prong of Federal Rule of Bankruptcy Procedure 9011(b). The movants respectfully requests the entry of an order sanctioning these parties to deter such conduct in the future.

WHEREFORE, movants respectfully request that the Court enter an order: a) granting the relief requested herein, and b) granting the movants such further relief as the Court deems just and proper.

MWH: 10116.003; 00017740.2

Respectfully submitted this the 28th day of July, 2017.


**MOON WRIGHT & HOUSTON, PLLC**

_____*/s/ Andrew T. Houston*_____
Travis W. Moon (Bar No. 3067)
Richard S. Wright (Bar No. 24622)
Andrew T. Houston (Bar No. 36208)
121 W. Trade Street, Suite 1950
Charlotte, North Carolina  28202
Telephone: (704) 944-6560
*Counsel for the Liquidating Agent*

MWH: 10116.003; 00017740.2

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Motion for Sanctions* was served on the

party listed below on July 28, 2017 by:

**U.S. first class mail upon**:

Bradley Pearce
Pearce Law PLLC
P.O. Box 31846
Charlotte, NC 28231

and

**Electronic transmission upon**:

brad@bepearcelaw.com

Dated:  Charlotte, North Carolina
        July 28, 2017

**MOON WRIGHT & HOUSTON, PLLC**

            */s/ Andrew T. Houston*
Andrew T. Houston (Bar No. 36208)
121 W. Trade Street, Suite 1950
Charlotte, North Carolina 28202
Telephone:  (704) 944-6560
*Counsel for the Liquidating Agent*