IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| **In re:**<br><br>**REDF MARKETING, LLC,**<br><br>Debtor. | Chapter 11<br><br>Case No: 12-32462 |
| **THE FINLEY GROUP, Liquidating Agent for REDF MARKETING, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**DANIEL J. ROSELLI and SARA GARCES ROSELLI,**<br><br>Defendants. | Adversary Proceeding No.: 17-03063 |

**BRIEF IN OPPOSITION TO MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF**

The Finley Group (the "Liquidating Agent"), as the liquidating agent for RedF Marketing, LLC (the "Debtor") submits this brief in opposition to the motion to dismiss the Plaintiff's second and third claims for relief (the "Motion"), [Doc. 41], and the brief in support of the Motion (the "Defendants' Brief"), [Doc. 43], filed by Daniel J. Roselli and Sara Garces Roselli (collectively, the "Rosellis," or "Defendants") in the above-captioned adversary proceeding on November 16, 2017.[1]

---

[1] The Liquidating Agent incorporates the factual allegations of the Amended Complaint in this adversary proceeding, [Doc. 38], as if set forth fully herein. Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Amended Complaint.

## BACKGROUND

### The Rosellis' First Motion to Dismiss

The Liquidating Agent commenced this action by filing the Complaint on June 21, 2017 (the "Original Complaint"). [Doc. 1]. The Defendants responded by filing their first motion to dismiss (the "First Dismissal Motion") and an accompanying brief on September 1, 2017. [Docs. 21 & 23]. The Liquidating Agent filed a *Brief in Opposition to Motion to Dismiss Complaint* on September 29, 2017 (the "First Reply"). [Doc. 34]. After the hearing, the Court entered an Order granting in part and denying in part the First Dismissal Motion. [Doc. 36]. The Court also granted the Liquidating Agent leave to file an amended complaint.

The Liquidating Agent filed an amended complaint on October 26, 2017 (the "Amended Complaint"). [Doc. 38]. The Amended Complaint is similar to the Original Complaint. The substantive changes to the Original Complaint consisted of the deletion of one numbered paragraph (with subparts) which included allegations regarding various bad-faith litigation tactics employed by the Defendants, and the addition of numbered paragraphs meant to clarify certain claims asserted in the Original Complaint. Specifically, the Liquidating Agent added factual allegations to clarify the basis for the Liquidating Agent's contentions that the Debtor did not pay the Rosellis' tax obligations as a mere volunteer. [Doc. 38, *Amend. Comp.* ¶¶ 36-38]. The Liquidating Agent also added a paragraph clarifying that the doctrine of constructive trust would provide an alternative basis for finding the refunded tax payments were property of the estate pursuant to section 541(a)(1) of the Bankruptcy Code. [Doc. 38, *Amend. Comp.* ¶ 45].[2]

---

[2] A blackline comparison showing the changes from the Original Complaint to the Amended Complaint is attached hereto as **Exhibit 1**.

**The Rosellis' Second Motion to Dismiss**

The Rosellis then filed the current Motion and Defendants' Brief, wherein they wrongly contend that the second and third claims for relief stated in the Amended Complaint fail to allege sufficient facts to state claims upon which relief can be granted. The Rosellis mistakenly claim that (1) the Modified Plan did not preserve for the Liquidating Agent any right to pursue the turnover of the refunded tax payments; (2) the Liquidating Agent failed to identify a creditor to whose rights it was subrogated; (3) the Debtor was merely a volunteer when it paid the Rosellis' tax liabilities; (4) an action for equitable subrogation is time barred; and (5) the Liquidating Agent's claim for conversion should fail in light of the definition of "owner" used in the Motor Vehicle Safety and Financial Responsibility Act.

The Liquidating Agent has previously addressed most of the Rosellis' repackaged arguments in its First Reply. [Doc. 34]. For instance, the Rosellis' first argument is little more than a rehashing of their contention that the Liquidating Agent did not have standing to bring the claims asserted in the Original Complaint. This argument was thoroughly rebutted in Section I of the First Reply, [Doc. 34 at 1-3], and the Liquidating Agent incorporates that discussion by reference as if it were fully set forth herein and further addresses these arguments in Section II below.

Section II of the First Reply also sets forth the Liquidating Agent's detailed explanation for why the Original Complaint (and, accordingly, the Amended Complaint) alleged sufficient facts to state claims for turnover of estate property pursuant to section 542 of the Bankruptcy Code and conversion of estate property. This discussion in the First Reply includes an element-by-element analysis of the Liquidating Agent's conversion and turnover claims, and explicitly identifies how the facts alleged in the Original Complaint (and subsequently re-alleged and supplemented in the Amended Complaint) satisfy each of those elements. Because the Amended Complaint contains only

minimal changes (primarily consisting of the inclusion of additional specific factual allegations to show that the Debtor was not a volunteer when it paid the Rosellis' tax liabilities) that discussion is equally relevant to the analysis of the Amended Complaint and is incorporated by reference as if fully set forth herein.

The remainder of the Rosellis' arguments asserted in the Motion and Defendants' Brief fail because they fundamentally misapprehend the nature of the Liquidating Agent's claims. The Rosellis premise their arguments on the notion that the Amended Complaint seeks the return of the refunded tax payments *solely* on a theory of state law subrogation. This argument is neither accurate nor complete. The Amended Complaint sets forth sufficient facts to show that the estate has an equitable interest in the refunded tax payments because: (a) the refunded tax payments are money whose origin is firmly rooted in the Debtor's pre-petition transactions, (b) the estate has an equitable right of subrogation in the refunded tax payments, or (c) the refunded tax payments are held in constructive trust.

Accordingly, and as discussed below specifically, the: (a) second claim for relief states a claim for turnover pursuant to 11 U.S.C. § 542(a), and (b) third claim for relief states a claim for conversion under North Carolina law.

## ARGUMENT

### I. Standard of Review.

A motion to dismiss pursuant to Rule 12(b)(6) tests "the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). A Rule 12(b)(6) motion "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein,* 825 F.3d 206, 214 (4th Cir. 2016). As this Court has stated, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Finley Grp. v. North*

*Carolina (In re Redf Mktg., LLC)*, No. 14-03267, 2015 Bankr. LEXIS 736, at *13 (Bankr. W.D.N.C. Mar. 10, 2015).

A complaint's sufficiency under Rule 12(b)(6) is determined by the *facts* alleged in the complaint, not necessarily the legal theories stated therein. *See Munoz v. Balt. Cty.*, No. RDB-11-02693, 2012 U.S. Dist. LEXIS 103597, at *25 (D. Md. July 25, 2012) (quoting *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1077-78 (7th Cir. 1992)) ("[A] complaint must not necessarily "plead law as well as fact" to survive a Rule 12(b)(6) motion to dismiss."). Accordingly, "a complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as 'relief is possible under any set of facts that could be established consistent with the allegations.'" *Tolle v. Carroll Tough, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992) (quoting *Barholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992); *accord Avellan v. Asset Acceptance, LLC*, No. 3:15-CV-00268-GCM, 2015 U.S. Dist. LEXIS 144256, at *3 (W.D.N.C. Oct. 23, 2015) (same).

In evaluating the complaint, the Court must accept "all well-pleaded allegations in the plaintiff's complaint as true and [draw] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). The factual allegations of the complaint must be "construed liberally so as to do substantial justice." *Public Employees Ret. Ass'n v. Deloitte & Touche LLP*, 551 F.3d 305, 311 (4th Cir. 2009). A complaint should be dismissed pursuant to Rule 12(b)(6) only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

Contrary to the arguments advanced in the Motion and Defendants' Brief, the Amended Complaint alleges sufficient facts to state claims for (1) turnover of estate property pursuant to section 542 of the Bankruptcy Code, and (2) conversion under state law.

II. **The Liquidating Agent has Standing to Pursue Turnover Claims under Section 542 of the Bankruptcy Code and Conversion Claims under State Law.**

As noted above, in Section I of Defendants' Brief at page 4, the Rosellis argue that the Liquidating Agent cannot bring counts 2 and 3 of the Amended Complaint because they were not preserved in the Modified Plan. Although they do not cite any law in support of this proposition, the argument is essentially the same standing objection that the Rosellis asserted unsuccessfully in their First Motion to Dismiss.

Moreover, the Rosellis' argument ignores the plain language of the Modified Plan and asks the Court to interpret it in a manner that is illegal under North Carolina law. The Modified Plan is clear that all "Causes of Action . . . including Avoidance Actions" vest in the Liquidating Agent to pursue for the benefit of creditors. The term "Causes of Action" was broadly defined in the Modified Plan to include: "all present or future claims, rights . . . actions in law or equity or otherwise . . . whether based on legal or equitable relief, whether arising under the Bankruptcy Code or federal, state, common, or other law or equity." [Doc. 69 at 5, Article 1.22] (definition of "Causes of Action"). The term Avoidance Actions was defined to include "[a]ny and all actions which a trustee, debtor in possession, or other appropriate party in interest may assert on behalf of the Estate under the Bankruptcy Code, *including actions pursuant to sections 542* . . . of the Bankruptcy Code." [Doc. 69 at 3, Article 1.6] (emphasis added).

The Modified Plan unquestionably gave the Liquidating Agent the right to pursue turnover claims pursuant to Section 542 of the Bankruptcy Code and also clearly gave the Liquidating Agent the right to pursue conversion claims (*i.e.* "actions in law . . . arising under . . . state, common or other law . . . ."). The Rosellis' arguments that these claims were not preserved lacks merit based on the foregoing unambiguous provisions of the Modified Plan. The Court should not countenance the Rosellis' attempts to cherry pick provisions of the Modified Plan so

they can keep the refunded tax payments, thereby creating a windfall for themselves to the detriment of the estate's creditors.

Moreover, the Rosellis ask the Court to construe the Modified Plan in a way that would be illegal, because it would violate North Carolina's prohibition against promoting champerty. *See, e.g., Charlotte-Mecklenburg Hosp. Auth. v. First of Ga. Ins. Co.*, 340 N.C. 88, 91 (1994) ("[t]he assignment of a claim gives the assignee control of the claim and promotes champerty. Such a contract is against public policy and void."). Indeed, the Rosellis' self-serving interpretation of the Modified Plan promotes champerty because it would require the Court to find that the tort claims at issue were sold and assigned to MGAD LLC. Accordingly, the Court should reject this tortured and illegal interpretation of the Modified Plan preferred by the Rosellis.

For the foregoing reasons, the Liquidating Agent has standing to pursue counts 2 and 3 of the Amended Complaint and these claims were properly preserved in the Modified Plan.

### III. The Liquidating Agent's Amended Complaint Alleges Sufficient Facts to State a Claim for Turnover of Estate Property Pursuant to Section 542 of the Bankruptcy Code.

*A. The refunded tax payments are property of the Debtor's estate.*

The Amended Complaint pleads adequate facts to support a claim for turnover of estate property pursuant to section 542 of the Bankruptcy Code. A properly pleaded claim for turnover pursuant to section 542 requires the trustee to allege:

> (1) the property is in the possession, custody or control of a noncustodial third party; (2) the property constitutes property of the estate; (3) the property is of the type that the trustee could use, sell or lease pursuant to section 363 or that the debtor could exempt under section 522; and (4) that the property is not of inconsequential value or benefit to the estate.

5 *Collier on Bankruptcy*, ¶ 542.02, (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

Section 541 of the Bankruptcy Code defines property of the estate to include "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "Property of the estate" also includes the "[p]roceeds, product, offspring, rents or profits from property of the estate." 11 U.S.C. § 541(a)(6). Such property also includes any interest in property the estate acquires after the commencement of the case. 11 U.S.C. § 541(a)(7).

The definition of estate property is thus intentionally broad. *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993). It includes "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative . . . ." *Id.* (citing *In re Anderson*, 128 Bankr. 850, 853 (D.R.I. 1991). Consistent with Congress's intent, the definition of property of the estate "has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle*, 382 U.S. 375, 379 (1966).

All of a debtor's prepetition property interests belong to the estate. Even a debtor's contingent or future interests in property are property of the estate "where they are 'sufficiently rooted in the [debtor's] pre-bankruptcy past[.]" *In re Gnadt*, No. 11-10378-BFK, 2015 Bankr. LEXIS 1552, at *14 (Bankr. E.D. Va. May 7, 2015) (quoting *In re Shearin*, 224 F.3d 346, 351-52 (4th Cir. 2000) (alterations in the original). As the Fourth Circuit has explained:

> ***Pre-petition assets . . . are those rooted in the debtor's pre-petition activities, including any proceeds that may flow from those assets in the future. These assets belong to the estate and ultimately to creditors***. Post-petition assets are those that result from the debtor's postpetition activities and are his to keep free and clear of the bankruptcy proceeding.

*Id.* (quoting *In re Andrews*, 80 F.3d 906, 910 (4th Cir. 1996) (alterations in original) (emphasis added). At least one court has specifically held that the broad definition of property of the estate includes funds traceable to the debtor's prepetition operation that are used to pay the tax

liabilities of the debtor's owners. *See Gilliam v. Speier (In re KRSM Props.)*, 318 B.R. 712, 719 (B.A.P. 9th Cir. 2004) (holding that trustee should receive the turnover of estimated tax payments made by the LLC debtor on its owners' behalf).

As discussed below, the allegations of the Amended Complaint plainly assert that the estate has an interest in the refunded tax payments. The Amended Complaint alleges sufficient facts to show the Court that this interest arises because: (a) the refunded tax payments are money whose origin is firmly rooted in the Debtor's pre-petition transactions, (b) the estate has an equitable right of subrogation in the refunded tax payments, or (c) it alleges sufficient facts to show that the refunded tax payments are held in constructive trust. The Liquidating Agent addresses these issues below in turn.

### B. The Amended Complaint states sufficient facts to show that the refunded tax payments are property of the estate under §541(a)(7) because the funds have their origin in the Debtor's pre-bankruptcy transactions.

The Sixth Circuit Court of Appeals addressed whether a post-bankruptcy refund of money is nevertheless property of the estate in *Borock v. Mathis (In re Clipper Int'l Corp.)*, 154 F.3d 565 (6th Cir. 1998). In *Borock*, the Sixth Circuit held that the refund of insurance overpayments were property of the estate and properly paid over to the corporate debtor's trustee on similar facts. *Id.* at 567. In *Borock*, the corporate debtor paid workers' disability compensation insurance from 1976 to 1981 to a state agency. *Id.* at 566. The debtor filed a chapter 11 bankruptcy petition in 1981. *Id.* The company's assets were sold and the case was converted in 1982 and closed in January of 1984. *Id.*

In 1989, the state agency "determined that it had accumulated an excessive surplus of money due to premium payments made by policy holders in 1977-1979 . . . ." and issued a dividend check to the debtor as a refund. *Id.* The debtor's principal, purporting to act on behalf of

Case 17-03063   Doc 45   Filed 12/28/17   Entered 12/28/17 17:26:30   Desc Main
                            Document      Page 10 of 20

the company and himself, filed suit in state court to obtain the refund. *Id*. In August 1989, the state court entered an order approving a settlement that, among other things, authorized the disbursement of the funds to the debtor's principal and a contingency fee to his attorney. *Id*.

After discovering this transaction, the debtor's trustee reopened the chapter 7 case and filed an adversary proceeding to recover the refund from various insiders on a theory of conversion. *Id*. Both the bankruptcy court and the district court found that the refunded payments were property of the estate, and the district court entered summary judgment in favor of the trustee on his conversion claim. *Id*. at 567.

The Sixth Circuit affirmed the district court's ruling that the refund was property of the estate, because it was "'money whose origin is part of the pre-petition period [and therefore] belongs to the estate pursuant to §541.'" *Id*. at 567 (quoting *Hartley v. Derryberry (In re Hartley)*, 47 B.R. 159, 161 (N.D. Ohio 1985)). Since the premium payments in question were made by the debtor prior to the bankruptcy filing, the Sixth Circuit held that the "bankruptcy court and the district court thus properly concluded that the [refund] was property of the bankruptcy estate." *Id*.

Much like in *Borock*, the Amended Complaint in this case alleges that the refunded tax payments are property of the estate because they have their origin in the Debtor's pre-bankruptcy transactions. Specifically, the Amended Complaint alleges the following facts:

- the Debtor paid $704,145 from its operating account to satisfy the Rosellis' 2010 and 2011 estimated state and federal tax liabilities [Doc. 38, *Amend. Comp.* ¶¶ 32-35 & 44];

- the Rosellis wrongfully amended the Debtor's 2010 and 2011 tax returns on or about April 14, 2014 [Doc. 38, *Amend. Comp.* ¶¶ 40-42];

- The Rosellis obtained refunds of the taxes paid by the Debtor for tax years 2010 and 2011 totaling in excess of $650,000 [Doc. 38, *Amend. Comp.* ¶ 43];

- the refunded tax payments are currently in the possession of the Rosellis [Doc. 38, *Amend. Comp.* ¶¶ 43 & 49]; and

- the Debtor's bankruptcy case was filed on October 12, 2012. [Doc. 38, *Amend. Comp.* ¶ 9].

Based on the foregoing allegations, the Amended Complaint asserts sufficient facts to show the Court that the refunded tax payments are property of the estate. As in *Borock*, the estate has an interest in the refunded tax payments because they are "money whose origin is part of the pre-petition period [and therefore] belong[] to the estate pursuant to §541.'" *Borock*, 154 F.3d at 567. The Amended Complaint therefore states a claim for relief. The Motion should be denied for this reason alone.

### C. The Amended Complaint alleges facts sufficient to show that the estate has a property interest in the refunded tax payments under the doctrine of equitable subrogation.

Taking the facts alleged in the Amended Complaint as true, as necessary when analyzing a motion to dismiss, the Amended Complaint also states facts sufficient to show that the estate had an interest in the refunded tax payments under a theory of equitable subrogation.

#### 1. Equitable subrogation is an equitable remedy which "operates on principles of natural justice without regard to form"

A right of equitable subrogation exists "if the obligation of another is paid by the plaintiff for the purpose of protecting some real or supposed right or interest of his own." *Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 277 N.C. 216, 221 (1970). Under North Carolina jurisprudence, equitable subrogation is a *remedy* that "may be invoked whenever the party claiming the benefit of subrogation pays the obligation of another for the purpose of protecting some real or supposed interest of his own." *Trs. of Garden of Prayer Baptist Church v. Geraldco Builders, Inc.*, 78 N.C. App. 108, 114, 336 S.E.2d 694, 698 (1985). The North Carolina Supreme Court has confirmed that the remedy of equitable subrogation "is highly favored and liberally applied . . . ." *Id*.

The doctrine of equitable subrogation is often used by the payor of an obligation to assert the payee's rights to recover from a third party, which should have paid the obligation. S*ee Peek v. Wachovia Bank & Tr. Co.*, 242 N.C. 1, 15 (1955) (discussing the application of equitable subrogation in a creditor priority context, while noting, "[f]or the present purposes it is not necessary to give a comprehensive classification to the various types of cases and situations to which the doctrine of subrogation may be applied."). Precedent does not so limit the doctrine. Rather, it is a "mode of equitable relief which operates on principles of natural justice without regard to form and independent of any contractual relation . . . ." *Id*. at 15-16. Equitable subrogation applies where an "insurer has made payments to the insured for the loss covered by the policy and the insured thereafter recovers for such loss from the tortfeasor . . . ." *Moore v. Beacon Ins. Co.*, 54 N.C. App. 669, 670 (1981). In such an instance, "the insurer can recover from the insured the amount that it had paid the insured, on the theory that otherwise the insured would be unjustly enriched by having been paid twice for the same loss." *Id*. at 671.

Relevant to the equitable subrogation context, the Amended Complaint alleges the following facts:

- the Debtor was a limited liability company treated as a partnership for tax purposes [Doc. 38, *Amend. Comp.* ¶¶ 26, 29-30];

- the Rosellis were personally liable for the payment of income taxes and that the Debtor had no tax liability [Doc. 38, *Amend. Comp.* ¶ 31];

- the Debtor paid $704,145 from its operating account to satisfy the Rosellis' 2010 and 2011 estimated state and federal tax liabilities [Doc. 38, *Amend. Comp.* ¶¶ 32-35 & 44];

- the Debtor made the payments based on its mistaken belief that it was required to do so by the terms of the Operating Agreement [Doc. 38, *Amend. Comp.* ¶¶ 36-38];

- the Debtor was equitably subrogated to the Rosellis' rights to any eventual refunds, since the Debtor made the initial tax payments [Doc. 38, *Amend. Comp.*¶¶ 39, 44 & 63];

- the Rosellis wrongfully amended the Debtor's 2010 and 2011 tax returns without authority on or about April 14, 2014 and obtained refunds of the taxes paid by the Debtor totaling in excess of $650,000 [Doc. 38, *Amend. Comp.*¶¶ 40-43]; and

- the refunded tax payments are currently in the possession of the Rosellis. [Doc. 38, *Amend. Comp.*¶¶ 43 & 49].

Accepting these alleged facts as true, the Amended Complaint shows that the Debtor had an equitable interest in the money it paid to satisfy the Rosellis' tax liabilities. Just as the insurer could recover the payments it previously made to the insured once the insured received a settlement from the tortfeasor in *Beacon Ins. Co.,* this interest was sufficient to give the Debtor a right of equitable subrogation to recover the refunded tax payments from the Rosellis.[3] Further, the funds used to pay the Rosellis' tax liabilities were "money whose origin is part of the pre-petition period [and therefore] belongs to the estate pursuant to §541.'" *Borock*, 154 F.3d at 567. Thus, the moment the Rosellis' received the refunded tax payments, they were in possession of property of the estate. That estate property must now be returned to the Liquidating Agent pursuant to section 542(a) of the Bankruptcy Code.[4]

### 2. The Debtor did not pay the Rosellis' tax liabilities as a mere volunteer

Under North Carolina law, a right of equitable subrogation exists "if the obligation of another is paid by the plaintiff for the purpose of protecting some real or supposed right or interest of his own." *Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 277 N.C. 216, 221 (1970). The doctrine is "not necessarily confined to those who are legally bound to make the

---

[3] Whether one would identify the Rosellis as the creditor to whom the Liquidating Agent was subrogated as it applied to the refunded tax payments, or whether it is more technically correct to ground the Liquidating Trustee's interests in the equitable doctrine of restitution or an action in assumpsit for money paid, *see N.C. Farm Bureau Mut. Ins. Co. v. Greer*, 54 N.C. App. 170, 171-172 (1981), is functionally irrelevant. In any instance, the Debtor has an equitable interest in the refunded tax payments, and such payments are therefore property of the estate pursuant to section 541 of the Bankruptcy Code.

[4] Without belaboring the point, the Liquidating Agent also submits that the Fifth Circuit's analysis in *Texas Company v. Miller*, 165 F.2d 111 (5th Cir. 1947) is highly persuasive in this case as discussed at pages 7 & 8 of the Liquidating Agent's First Reply. [Doc. 34]. In *Miller*, the Fifth Circuit held that the actual payor of certain taxes was entitled to the refunded tax payments, not the debtor/taxpayer, under a theory of equitable subrogation, finding that the estate "was entitled to no such windfall as it received here. It obtained a refund to it of taxes that it never paid." *Miller*, 165 F.2d at 116. The same logic should apply here to prevent a windfall in favor of the Rosellis.

payment, but extends as well to persons who pay the debt in self-protection . . . ." *Progressive Am. Ins. Co. v. Geico Gen. Ins. Co.*, 180 N.C. App. 457, 461 (2006) (quoting *Jamestown Mut. Ins.*, 277 N.C. at 221). The doctrine is applicable even "'though the party who makes the payment may, in fact, have no real or valid legal interest to protect, he may yet be subrogated when he acts in good faith, in the belief that he had such interest.'" *Id.*

In addition to the factual allegations discussed above, the Amended Complaint added the following:

- Section 7.1 of the Debtor's Operating Agreement provided that the "Company shall distribute amounts to the Members annually . . . at least sufficient for the Members to pay their federal and state income taxes . . . ." [Doc. 38, *Amend. Comp.* ¶ 36];

- Dan Roselli previously testified under oath that he understood Section 7.1 of the Operating Agreement "obligated [the Debtor] to distribute cash to the Members to pay the State and Federal tax liability . . . ." [Doc. 38, *Amend. Comp.* ¶ 37]; and

- the Debtor paid the Rosellis' tax liabilities under the belief that it was legally required to do so. [Doc. 38, *Amend. Comp.* ¶ 38].

These allegations are of sufficient detail to show that the Debtor did not pay the Rosellis' tax liabilities as a mere volunteer. Rather, the Debtor was acting pursuant to the legal obligations ostensibly imposed upon it by the company's Operating Agreement. As the North Carolina case law cited above clearly illustrates, the Debtor still has a right of equitable subrogation, even if its interpretation of the operating agreement was mistaken and it did not have, in fact, any "real or valid legal interest to protect." The Court should thus reject the Rosellis' argument on this point and deny the Motion.

### 3. The Liquidating Agent's claim for turnover is not barred by any statute of limitation

While a state law subrogation action is subject to a three-year statute of limitations, *see Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 277 N.C. 216, 222 (1970), a turnover action pursuant to 11 U.S.C. § 542 is <u>not</u> subject to any statute of limitation. *In re Mushroom Transp. Co.*, 382 F.3d 325, 337 (3d Cir. 2004) (holding that "[t]he Bankruptcy Code does not impose a statute of limitation on turnover claims arising under [sections 542 and 543]."); *Grayson Consulting, Inc. v. Cathcart*, No. 2:07-cv-02992-DCN, 2013 U.S. Dist. LEXIS 127866, at *11 (D.S.C. Sep. 9, 2013) (same).

The Liquidating Agent's substantive claim arises under section 542 of the Bankruptcy Code. Equitable subrogation is merely one possible basis to explain the Debtor's equitable interest in the refunded tax payments, which rendered the refunds property of the estate. The Amended Complaint includes the following allegations:

- the Debtor made the Federal Tax Payments on January 18, 2011, April 14, 2011, and January 17, 2012 [Doc. 38, *Amend. Comp.* ¶ 33];

- the Debtor made the State Tax Payments on April 14, 2011 and January 17, 2012 [Doc. 38, *Amend Comp.* ¶ 34]; and

- the Petition Date was October 12, 2012. [Doc. 38, *Amend. Comp.* ¶ 9].

Immediately upon the Petition Date, all of the Debtor's equitable interests in property became property of the estate pursuant to section 541 of the Bankruptcy Code. The Debtor's equitable interests (contingent, liquidated, future or otherwise) in the refunded money the Debtor paid to satisfy the Rosellis' tax liabilities became property of the estate at that moment. That moment occurred well within the time allowed by the North Carolina statute of limitations for equitable subrogation (to the extent that limitations provision even applies, which the Liquidating Agent denies).

Moreover, the Amended Complaint asserts a claim under section 542 of the Bankruptcy Code (rather than a stand-alone equitable subrogation claim), which is not subject to any statute of limitations. Accordingly, the Rosellis' contention that the three-year state statute of limitation applicable to state law claims for equitable subrogation bars the Liquidating Agent's claim is misdirected and inapplicable. A turnover action is not amenable to a statute of limitations defense. The Amended Complaint is timely under federal law, and dismissal of the Amended Complaint under Rule 12(b)(6) would therefore be inappropriate.[5]

### D. The Amended Complaint alternatively alleges that the Debtor had an equitable interest in the refunded tax payments under the doctrine of constructive trust.

Under North Carolina law, a constructive trust is an interest in the title (or ownership) of the trust *res*. *Campbell v. Cathcart (In re Derivium Capital, LLC)*, 380 B.R. 429, 443 (Bankr. D.S.C. 2006). A constructive trust arises "immediately upon the wrongful conduct giving rise to the constructive trust and not when the judgment recognizing the constructive trust is entered." *Miller v. Van Dorn Demag Corp. (In re Asheboro Precision Plastics, Inc.)*, Nos. 03-11319C-7G, 04-2043, 2005 Bankr. LEXIS 1091, at *34 n.6 (Bankr. M.D.N.C. Mar. 1, 2005).

As an alternative explanation of the Debtor's equitable property interest in the refunded tax payments, the Amended Complaint alleges, "since the Rosellis' 2010 and 2011 taxes were paid with the Debtor's funds, it would be inequitable for the Rosellis to retain the refunded tax payments rather than the Debtor or the Debtor's estate. The Rosellis therefore received and held the refund of the Tax Payments in a constructive trust for the Debtor's benefit." [Doc. 38, *Amend. Comp*. ¶ 45].

---

[5] The Rosellis' constant pivoting between whether this claim was brought "too soon" or "too late" is dizzying. In their motion to dismiss the Rule 60 Motion filed in the base case, the Rosellis argued that the Rule 60 motion had to be dismissed as untimely "because it was filed . . . more than a year after the Liquidating Agent knew about the amended tax returns and months after the Liquidating Agent began drafting a complaint against the Rosellis." *See* Rosellis' Motion to Dismiss Rule 60 Motion. [Base Doc. 514, ¶ 6]. Then, the Rosellis argued in the brief in support of their First Dismissal Motion that "this case is not ripe" until the Liquidating Agent's suit against the United States is resolved. [Doc. 23 at 11 of 21]. Now, the Rosellis once again contend incorrectly that this suit is time barred. It is impossible to reconcile these inconsistent positions.

Even should the Court find that there is some doubt whether the Debtor's right of equitable subrogation would qualify as an equitable interest within the meaning of section 541(a)(1) of the Bankruptcy Code, the Liquidating Agent's allegation that the refunded tax payments held in trust for the estate would be sufficient grounds to deny dismissal under Rule 12(b)(6). From either perspective, the Motion should be denied.

**IV.   The Amended Complaint Alleges Sufficient Facts to State a Claim for Conversion of Estate Property.**

As discussed in detail in the First Reply, the Original Complaint (and thus, for the same reasons cited in the First Reply, the Amended Complaint) alleges facts showing that the refunded tax payments are held in constructive trust in favor of the Debtor's estate. [*See* Doc. 34, *First Reply*, §§ II.C-D]. A constructive trust is "imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property, which such holder acquired through fraud, breach of duty or *some other circumstance making it inequitable for him to retain it* against the claim of the beneficiary of the constructive trust." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 530 (2012) (quoting *Wilson v. Crab Orchard Dev. Co.*, 276 N.C. 198, 211 (1970)) (emphasis added). Additionally, "a constructive trust is deemed to arise immediately upon the wrongful conduct giving rise to the constructive trust and not when the judgment recognizing the constructive trust is entered." *Miller v. Van Dorn Demag Corp. (In re Asheboro Precision Plastics, Inc.)*, Nos. 03-11319C-7G, 04-2043, 2005 Bankr. LEXIS 1091, at *34 n.6 (Bankr. M.D.N.C. Mar. 1, 2005).

As further explained in the First Reply, a right to a constructive trust is an interest in the title (or ownership) of the trust *res* under North Carolina law. *Campbell v. Cathcart (In re Derivium Capital, LLC)*, 380 B.R. 429, 443 (Bankr. D.S.C. 2006). Thus, because the Amended Complaint alleges sufficient facts to show that the Debtor had an *ownership* interest in the

refunded tax payments (through a constructive trust), the Amended Complaint states sufficient facts to support a claim for conversion.

The Rosellis argue that such an equitable interest "is not an ownership interest sufficient to support a claim for conversion." [Doc. 43, *Defendants' Brief* at 8]. However, the only case law they cite for this proposition is wholly inapplicable to the case before the Court. In *Jenkins v. Aetna Casualty & Surety Co.*, 324 N.C. 394 (1989), the North Carolina Supreme Court faced the question of whether an automobile insurance liability policy excluded the vehicle in which the plaintiff was injured from insurance coverage. *Id*. at 774. The policy "excluded coverage for liability arising from the ownership . . . of any vehicle, other than those listed as covered vehicles in the policy, which was 'owned' by the covered driver . . . ." *Id*. The insured driver had purchased the vehicle, but never obtained a certificate of title. *Id*. Because he had no title, the court determined that he did not "own" the vehicle within the terms of the Motor Vehicle Safety and Financial Responsibility Act, N.C. Gen. Stat. §§ 20-279.1 through 20-279.39. *Id*. Thus, the court determined that the vehicle could not fall under the exclusion listed in the insurance policy. *Id*. at 777.

The Rosellis' reliance upon *Jenkins* is misplaced. There is nothing in the North Carolina Supreme Court's opinion to suggest it has any application to the case at bar. While an equitable interest in property may not give rise to the conclusion that a party "owns" a car for the purpose of interpreting automobile liability insurance exclusions, a beneficiary's interest in property held in constructive trust <u>is</u> an interest in title to the trust *res*. *Campbell*, 380 B.R. at 443. Since this interest is a prepetition interest in property, it is property of the estate and conversion is an appropriate remedy. Simply put, *Jenkins* had nothing to do with property of a bankruptcy estate. The Court's analysis should focus on the application of bankruptcy principles to the facts stated

in the Amended Complaint, and not unrelated concepts involved in interpretation of insurance contracts.

This conclusion is also reinforced by the Sixth Circuit's opinion in *Borock*, which is discussed above at length. In *Borock,* the Sixth Circuit upheld the district court's finding that summary judgment was properly entered in favor of the bankruptcy trustee on his conversion claim where the Debtor's principal and his attorney received refunds of insurance premiums that were paid by the debtor prior to its bankruptcy filing. *See Borock*, 154 F.3d at 567 (holding that trustee was properly awarded summary judgment on a conversion claim against insiders related to the receipt of refunded insurance premiums received after closing of bankruptcy case).

For all of these reasons, the Motion should be denied.

## CONCLUSION

Based on the foregoing, the Liquidating Agent respectfully submits that the Court should enter an order: (i) denying the Motion, and (ii) granting such other and further relief as the Court deems just and reasonable.

Dated: Charlotte, North Carolina
December 28, 2017

                                                  MOON WRIGHT AND HOUSTON, PLLC

                                                  */s/ Andrew T. Houston*

                                                  Andrew T. Houston (NC Bar No. 36208)
                                                  Caleb Brown (NC Bar No. 41131)
                                                  121 West Trade Street, Suite 1950
                                                  Charlotte, North Carolina 28202
                                                  Telephone: (704) 944-6560
                                                  *Counsel for the Liquidating Agent*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing *Brief in Opposition to Motion to Dismiss Second and Third Claims for Relief* was served by electronic notification on those parties registered with the United States Bankruptcy Court, Western District of North Carolina ECF system to receive notices for this case on the date shown below.

Dated: Charlotte, North Carolina
December 28, 2017

**MOON WRIGHT & HOUSTON, PLLC**

    */s/ Andrew T. Houston*
Andrew T. Houston (Bar No. 36208)
Caleb Brown (Bar No. 41131)
121 West Trade Street, Suite 1950
Charlotte, North Carolina 28202
Telephone: (704) 944-6560
*Counsel for the Liquidating Agent*