

J. Craig Whitley
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| RedF Marketing, LLC, | ) | Chapter 11 |
| | ) | Case No. 12-32462 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| The Finley Group, Liquidating Agent | ) | |
| For RedF Marketing, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding |
| v. | ) | No. 17-03063 |
| | ) | |
| Daniel J Roselli and Sara Garces Roselli, | ) | |
| | ) | |
| Defendants. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on the motion of Daniel and Sara Roselli (the "Defendants" or the "Rosellis"), to dismiss Claims Two and Three of the Amended Complaint filed by The Finley Group (the "Plaintiff" or the "Liquidating Agent"), Liquidating Agent for RedF Marketing, LLC ("RedF"), pursuant Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Having considered the parties' briefs and oral arguments, this court concludes that the Second (Turnover) and Third (Conversion) Claims must be dismissed with prejudice. Regarding the Second Claim, the Liquidating Agent has failed to plead an undisputed property interest in the subject monies to support turnover under 11 U.S.C. § 542. Equitable subrogation is unavailing not only because any such claim is unliquidated, but also because (1) the claim is time barred, (2) the Amended Complaint does not plead all of the necessary elements and (3) the Liquidating Agent seeks to subrogate not to the original creditors rights, but to those of the original account debtor. The Third Claim (conversion) must be dismissed due to the failure to plead facts and law demonstrating the bankruptcy estate's (the "Estate") ownership of the subject property.

**Background**

Given the lengthy prior proceedings in this case, a summation of what has already occurred is helpful to frame the current dispute between the Liquidating Agent and the Rosellis.

Prior to bankruptcy, RedF was a North Carolina limited liability corporation operated by member/managers Dan and Sara Roselli. After losing a trademark infringement action in U.S. District Court, RedF was forced into an involuntary bankruptcy case by its creditor on October 12, 2012. See *Bridgetree, Inc. et al. v. Redf Marketing, LLC, et al.*, Case No. 10-CV-00228. RedF chose to convert to Chapter 11 and, after lengthy negotiations, confirmed a consensual plan of liquidation on April 29, 2013 (the "Plan"). Plan of Liquidation of RedF Marketing, LLC, *In re RedF Marketing, LLC*, No. 12-32462 (2012), ECF No. 69; Modification of Plan, *In re RedF Marketing, LLC*, No. 12-32462 (2013), ECF No. 150;

Second Modification of Plan, *In re RedF Marketing, LLC*, No. 12-32462 (2013), ECF No. 155.

Under the Plan, many of the company's assets were sold to a third party. A Liquidating Agent[1] was appointed to administer the remainder, primarily lawsuits, for the benefit of creditors. The Rosellis' ownership interests in RedF were cancelled and RedF ceased to exist as an entity. Mutual releases of claims were exchanged between the Rosellis and the Liquidating Agent. With this, the Rosellis' involvement in the bankruptcy case appeared to be over.

However, as the Liquidating Agent proceeded to file transfer avoidance actions against third parties (to whom the Rosellis might be liable should the actions succeed), the Rosellis again became active in the case. The Rosellis were named in third party complaints by some of the transfer defendants. See Third Party Complaint, *State of North Carolina v. Packard Place Properties, LLC.*, AP No. 14-03267 (2015), ECF No. 24. They organized defense efforts in those adversary proceedings and reasserted monetary claims against the bankruptcy estate—much to the annoyance of the Liquidating Agent.

Among the avoidance actions in question was a suit against the United States of America. In that proceeding, the Liquidating Agent seeks to recover $639,675.00 of prepetition payments made by RedF to the Internal Revenue Service (the "IRS") on account of the Rosellis' 2010-11 personal tax liabilities. Complaint, *The Finley Group v. United States of America*, AP No. 14-3266 (2014), ECF No. 1. That action is pending.

A second transfer avoidance action was brought against the State of North Carolina (the "State"). Complaint, *The Finley Group v. State of North Carolina*, AP. No. 14-3267

---

[11] The Plan gave the Liquidating Agent the powers of a bankruptcy trustee. Plan of Liquidation of RedF Marketing, LLC, *In re RedF Marketing, LLC*, No. 12-32462 (2012), ECF No. 69

(2014) ECF No. 1.  That action, since settled, sought to recover another $64,470.00 of prepetition payments made by RedF to the North Carolina Department of Revenue in payment of the Rosellis' individual tax liabilities for tax years 2010-11.

### The Present Action

On April 14, 2014, almost a year after the Plan's Effective Date and while both actions were pending against the two taxing authorities, the Rosellis filed amended state and federal tax returns for tax years 2010 and 2011 on RedF's behalf, and presumably, for themselves.[2]  Complaint, *The Finley Group v. Roselli*, AP No. 17-03063 (2017) ECF No. 1. As a result, the Rosellis received tax refunds totaling approximately $650,000.00 (the "Tax Refunds").  The Rosellis did not notify the Liquidating Agent before amending the returns, nor did they inform the Liquidating Agent when they received the Tax Refunds.  Amended Complaint, *The Finley Group v. Roselli*, AP No. 17-03063 (2017) ECF No. 38.

Upon learning of these events, the Liquidating Agent filed the present action against the Rosellis (the "Original Complaint").  Complaint, *The Finley Group v. Roselli*, AP No. 17-03063 (2017) ECF No. 1.  The Original Complaint sought relief against the Rosellis for a variety of alleged transgressions; however, the most significant of those claims pertained to the Tax Refunds.  First, the Original Complaint asserted that the Rosellis' amendment of RedF's tax returns constituted a willful violation of the Plan.  *Id.*  Second, the Liquidating Agent demanded turnover of the Tax Refunds under Bankruptcy Code Section 542.  *Id.* Third, the Liquidating Agent asserted state law claims against the Rosellis for conversion and constructive trust as to the Tax Refunds.  *Id.*

---

[2] As discussed below, RedF was a "pass through entity" for tax purposes which would have filed only informational returns.  Its owners, the Rosellis, would have treated any taxable income or losses of the debtor corporation in their personal returns.  I.R.C. § 1366.

## The First Dismissal Motion

The Rosellis moved to dismiss the Original Complaint (the "First Dismissal Motion"). Motion to Dismiss, *The Finley Group v. Roselli*, AP No. 17-03063 (2017) ECF No. 21. After briefing and a hearing, the First Dismissal Motion was granted in part and denied in part (the "First Order"). Order, *The Finley Group v. Roselli*, AP No. 17-03063 (2017) ECF No. 36. Specifically, those portions of the First Claim (Willful violations of the Plan) founded upon the acts described in subparagraphs (a) through (d) of paragraph 57 were dismissed with prejudice, for failure to state claims upon which relief could be granted. The remainder of the First Claim survived.

The remaining counts of the Original Complaint pertained to the Tax Refunds and were founded on the proposition that these monies originally belonged to the Estate. The Second Claim (Turnover) asserted that the Tax Refunds were subject to turnover under 11 U.S.C. § 542 because the Estate was "equitably subrogated" to the Rosellis' rights in the Tax Refunds or alternatively, the Tax Refunds were "proceeds of property of the Debtor's estate…" Complaint, *The Finley Group v. Roselli*, AP No. 17-03063 (2017) ECF No. 1. The Third Claim accused the Rosellis of converting the Tax Refunds. Finally, the Fourth Claim sought to impose a constructive trust over the Tax Refunds and any proceeds thereof.

The Rosellis disagreed with the premise of Estate ownership of the Tax Refunds, for two essential reasons. First, the Rosellis argued that the Plan did not preserve any rights in the Estate as to the Tax Refunds. Second, and because RedF was for tax purposes a "pass through" entity,[3] the Rosellis argued that the company's tax attributes, including any rights

---

[3] The parties disagree whether for tax purposes, RedF was a Subchapter S corporation, as opposed to an entity treated as a partnership. This would appear to be a distinction without meaning. Either way, RedF was a pass through entity, meaning its owners and not it were responsible for paying taxes on its income.

to the Tax Refunds, belonged to themselves as RedF's owners.  Brief in Support of Motion to Dismiss, *The Finley Group v. Roselli*, AP No. 17-03063 (2017) ECF No. 23. This Court disagreed with the Rosellis' first argument but agreed with the second.  As pled, the Second, Third and Fourth Claims of the Original Complaint failed to plead plausible claims for relief. Order, The Finley Group v. Roselli, AP No. 17-03063 (2017) ECF No. 36.  However, the Liquidating Agent was afforded an opportunity to amend its complaint. *Id*.

### The Amended Complaint

The Liquidating Agent filed its Amended Complaint on October 26, 2017 (the "Amended Complaint").  Amended Complaint, *The Finley Group v. Roselli*, AP No. 17-03063 (2017) ECF No. 38.  The Amended Complaint is substantially similar to the Original Complaint but contains a few new averments to support the Estate's ownership contentions as to the Tax Refunds.

In particular, the amended Second Claim for Relief (Turnover) attempts to flesh out the claim for equitable subordination.  *Id*.  A new allegation posits that, while not legally liable for the Rosellis' personal income taxes, RedF paid the Rosellis' 2010-2011 tax obligations under the mistaken belief that it was required to do so.  The Liquidating Agent contends that this mistaken belief was founded on RedF's Operating Agreement, which required RedF to make annual distributions to the Rosellis sufficient to pay their taxes on their shares of company income.  The Liquidating Agent's contention is that, in paying the Rosellis' personal taxes, RedF was acting under the good faith belief that it was protecting its own legal interests and not acting as a mere volunteer.  With this, the Liquidating Agent concludes that RedF was equitably subrogated to the Rosellis' rights in any eventual refund of the tax payments.

Similar amplification is added to the amended Third Claim (Conversion).  In it, the Liquidating Agent posits that "since the Rosellis' 2010 and 2011 taxes were paid with the Debtor's

funds, it would be inequitable for the Rosellis to retain the Tax Refunds rather than the Debtor or the Debtor's estate. The Rosellis therefore received and held the Tax Refunds in a constructive trust for the Debtor's benefit." *Id.* at 9. The Third Claim also newly pleads that the Estate was the "lawful owner of the Tax Refunds from the time the Rosellis received the same." *Id.* at 12. The Fourth Claim (Constructive Trust) is repled but is unchanged from the Original Complaint.

The Rosellis have renewed their motion to dismiss as to the Second and Third Claims of the Amended Complaint. Second Motion to Dismiss, *The Finley Group v. Roselli*, AP No. 17-03063 (2017) ECF No. 41.

### Applicable Legal Standards

Rule 12(b)(6) tests the legal sufficiency of the complaint. *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). Under that rule, courts are obliged to accept as true all of the factual allegations set out in a complaint, construe those allegations liberally, and draw inferences in the light most favorable to the plaintiff. *Tronox Inc. v. Anadarko Petrol. Corp. (In re Tronox Inc.)*, 429 B.R. 73, 90 (Bankr. S.D.N.Y. 2010).

To gauge the sufficiency of a complaint, a two-step process is employed. "First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions," and second, "a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff has a plausible claim for relief." *Holmes v. City of Wilmington*, 79 F. Supp. 3d 497, 505 (D. Del. 2015) (citations and quotation marks omitted).

Whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To be clear, a "plausibility standard" is not

the same as a "probability standard." *Houck*, 791 F.3d at 484 ("To survive a motion to dismiss, a plaintiff need not demonstrate that her right to relief is probable or that alternative explanations are less likely; rather, she must merely advance her claim 'across the line from conceivable to plausible.' " (citation omitted)). "The court's determination is not whether the non-moving party 'will ultimately prevail' but whether that party is 'entitled to offer evidence to support the claims.' " *Holmes*, 79 F. Supp. 3d at 505 (citation omitted).

Finally, in considering the legal sufficiency of a complaint, the pleading must be read as a whole. In other words, "defendants cannot secure dismissal by cherry-picking only those allegations susceptible to rebuttal and disregarding the remainder." *Tronox*, 429 B.R. at 90 (citation omitted).

## DISCUSSION

**I. The Plan Preserved all Legal Actions Belonging to the Bankruptcy Estate, Including Turnover Actions under Section 542. Assuming Such Actions Lie, the Liquidating Agent is Authorized to Bring Them.**

The Rosellis have renewed their argument from the First Dismissal Motion, that the Plan did not preserve or assign to the Liquidating Agent any right to the Tax Refunds. Defendants' Brief, *The Finley Group v. Roselli*, AP No. 17-03063 (2017) ECF No. 43 at 4. They point to Section 7.2 of the Plan. Under that provision, most of RedF's assets were sold to a newly formed corporation, Newco. The only assets preserved for administration by the Liquidating Agent were "Liquidation Estate Assets." These consisted of: (i) Excluded Assets, (ii) Causes of Action owned by the Debtor, including, without limitation, all Avoidance Actions, and (iii) the Newco Agreement. Subparts (i) and (iii) are clearly inapplicable to his dispute.

The Rosellis argue that if RedF had any rights in the Tax Refunds, those rights would constitute general intangibles under the Uniform Commercial Code and would be included in the "Purchased Assets" conveyed to Newco under Plan Section 7.1. Thus, Newco might own the Tax Refunds, but the Estate does not.

The Trustee counters that the Tax Refunds are "Causes of Action" under the Plan and thus are assets preserved for administration by the Liquidating Agent. As defined in the Plan, "Causes of Action" includes "all present or future claims, rights . . . actions in law or equity or otherwise . . . whether based on legal or equitable relief, whether arising under the Bankruptcy Code or federal, state, common, or other law or equity…." Plan of Liquidation of RedF Marketing, LLC, *In re RedF Marketing, LLC*, No. 12-32462 (2012), ECF No. 69 at 5. "Causes of Action" also include Avoidance Actions, which in turn are defined as "[a]ny and all actions which a trustee, debtor in possession, or other appropriate party in interest may assert on behalf of the Estate under the Bankruptcy Code, *including actions pursuant to sections 542 . . . of the Bankruptcy Code.*" *Id.* (emphasis added).

On this particular point, this court agrees with the Liquidating Agent. The specific provisions of the Plan control its more general terms. Here, the Plan expressly preserved all legal actions belonging to the bankruptcy estate, including turnover actions under Section 542. Assuming that such actions lie, the Liquidating Agent is authorized to bring them. However, the assumption that any such actions lie is not well founded.

**II. The Second Claim for Relief Fails to State a Claim for Turnover under Section 542 or Equitable Subrogation.**

Bankruptcy Code Section 542(a) provides in relevant part:

> an entity…in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title,…shall deliver to the trustee, and account for, such property or the value of such property,

unless such property is of inconsequential value or benefit to the estate. 11U.S.C. § 542.

A properly pled claim for turnover pursuant to section 542 requires the trustee to allege four things:

> (1) the property is in the possession, custody or control of a noncustodial third party; (2) the property constitutes property of the estate; (3) the property is of the type that the trustee could use, sell or lease pursuant to section 363 or that the debtor could exempt under section 522; and (4) that the property is not of inconsequential value or benefit to the estate. 5 *Collier on Bankruptcy*, ¶ 542.02, (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

Here, the dispute turns on whether the Tax Refunds were "property of the estate." Property of the estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). It also includes the "[p]roceeds, product, offspring, rents or profits from property of the estate." 11 U.S.C. § 541(a)(6). Finally, estate property includes any interest in property that the estate acquires after the commencement of the case. 11 U.S.C. § 541(a)(7).

The definition of estate property is intentionally broad, but it is not without limits. *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) *abrogated by Law v. Siegel*, 571 U.S. 415 (2014). For example, a bankruptcy filing ordinarily does not give a debtor, or its estate, property rights that did not exist before the case was filed. *Butner, v. United States*, 440 U.S. 48, 55 (1979) ("Unless some federal interest requires a different result, there is no reason why such [property] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). The property interests, if any, a debtor holds as of the petition date is determined by nonbankruptcy law. *Universal Cooperatives, Inc. v. FCX, Inc. (In re FCX, Inc.)*, 853 F.2d 1149, 1153 (4th Cir. 1988).

A. Because Under Applicable Tax Law, the Tax Attributes of a Pass Through Corporation Belong to its Shareholders, the Rosellis, not RedF, Own the Tax Refunds. Hence, they were not Estate Property.

Just as with the Original Complaint, the Liquidating Agent presently argues that the Tax Refunds were Section 541 estate property because: (a) the Rosellis' prepetition taxes were paid from funds in the Debtor's prepetition bank accounts, and (b) the Rosellis obtained the Tax Refunds post confirmation by amending RedF's tax returns. Amended Complaint, *The Finley Group v. Roselli*, AP No. 17-03063 (2017) ECF No. 38 at 6-7. From these two assertions, the Liquidating Agent concludes that the Tax Refunds are "proceeds" of estate property, or alternatively, the Estate was equitably subrogated to the Rosellis' rights in the Tax Refunds. *Id.* at 8.

However, the Rosellis' briefs refuted these contentions. The Rosellis argued that because RedF was an ignored entity for income tax purposes, its tax attributes, including any rights in the Tax Refunds, "passed through" to themselves as shareholders. Brief in Support of Motion to Dismiss, *The Finley Group v. Roselli*, AP No. 17-03063 (2017) ECF No. 23 at 7-8.

The Rosellis produced several well-reasoned cases in support of their position that only the shareholders who bear liability for the corporation's taxable income, may amend its/their returns so as to seek a tax refund. Among them were cases recognizing that a "pass through" entity, particularly a Subchapter S corporation, lacks standing to pursue a tax refund. See *Borton & Sons, Inc. v. United States*, 12-CV-3132-TOR (E.D. Wash. April 2, 2013) and *Alon Int'l, Inc. v. United States*, 910 F. Supp. 233, 236 (W.D. Pa. 1995) (granting defendants' motion to dismiss because the plaintiff corporation "as a Subchapter S corporation, lacks standing to pursue a refund action.").

The Rosellis also relied on a Third Circuit decision which held that under federal income tax law, "[i]t would be impossible for a trustee (or a debtor-in-possession) to 'marshal' a debtor's S-corp status and use it to compensate creditors, as that status is not controlled by the debtor and has no realizable benefit." *Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC)*, 716 F.3d 736, 753–58 (3rd Cir. 2013).

Finally, the Rosellis have cited three bankruptcy decisions to support their contention that the Tax Refunds were never property of RedF nor its Estate. See *Borton & Sons, Inc. v. United States*, No. 12- CV-3132-TOR (E.D. Wash. April 2, 2013); *Official Comm. of Unsecured Creditors of Forman Enters., Inc. v. Forman (In re Forman Enterprises, Inc.)*, 281 B.R. 600 (Bankr. W.D. Pa. 2002); *Stanziale v. CopperCom, Inc. (In re Conex Holdings, LLC)*, 518 B.R. 792 (Bankr. D. Del. 2014). *Borton & Sons* held that "any refund action must be pursued by the individual shareholders rather than by the corporation itself." *Borton & Sons*, at 2. Meanwhile, *Forman Enterprises* held that the bankruptcy estate of a former subchapter S corporation did not succeed to that company's net operating losses ("NOLs") and therefore, the Chapter 7 bankruptcy trustee could not recover from the corporation's shareholders who, during the Chapter 11 phase of the case used these NOL's to obtain tax refunds. *In re Forman Enterprises, Inc.*, 518 B.R. at 612.

The *Conex Holdings* decision was particularly persuasive as to the current dispute. There, the Delaware Bankruptcy Court dismissed a Section 542 turnover action seeking recovery of tax refunds from the debtor's parent company with prejudice based upon a Rule 12(b)(6) motion. *In re Conex Holdings, LLC*, 518 B.R. at 809. The *Connex Holdings* trustee sought turnover of funds from the parent company of another "pass through" corporation (an association) for its use of NOL's generated by the debtor corporation's

operations in its own tax returns.  See *id.* at 802.  However, that court recognized that since the debtor was a pass through entity it, and thus its bankruptcy estate, held no interest in any resulting tax refunds[4]:

> "[F]ederal income tax law indicates that the Defendant directly held [the debtor's] assets and liabilities, which included any tax benefits or liabilities derived from [the debtor's prepetition] operating losses in 2008.  Indeed, the I[nternal] R[evenue] C[ode] precludes the Trustee from pleading this undisputed right to the Receivable—and thus a turnover claim—because [the debtor's] NOLs and the right to use them passed through by operation of federal income tax law to the Defendant.  Any tax benefits derived from the Defendant's use of [the debtor's] NOLs inured solely to the benefit of the Defendant as [the debtor's] single member."  *Id.* at 802-803 (citations omitted).

Taken together, these decisions led this Court to the conclusion, reaffirmed today, that RedF's tax attributes, including any right to the Tax Refunds, belong to its shareholders and not the bankruptcy trustee.

The Liquidating Agent, in an attempt to distinguish the current case from those cited by the Rosellis, argued in the first dismissal proceeding that the state law doctrine of equitable subrogation made the Tax Refunds the property of RedF.  Brief in Opposition to Motion to Dismiss, *The Finley Group v. Roselli*, AP No. 17-03063 (2017) ECF No. 34 at 6-8.  Alternatively, the Liquidating Agent argued that because RedF paid the original taxes, it possessed equitable property rights in the Tax Refunds such that a state law claim lay for their conversion as well as the imposition of a constructive trust on the funds in the Rosellis' possession.  *Id.* at 20.

---

[4]More precisely, the *Conex* Trustee sought turnover of an intercompany receivable from the Debtor's parent, which receivable was based upon the parent company having used the Debtor's NOL's to obtain a tax refund.  This factual distinction does not alter the underlying legal principle—the bankruptcy estate had no right to a pass through debtor's tax attributes. These belong to the shareholder.

This Court agreed with the Rosellis' assessment of the applicable tax law and its effect on the bankruptcy estate. We further found that the Liquidating Agent's state law claims of equitable subrogation and conversion were deficient and subject to dismissal.[5] Importantly, this Court found that reliance on federal tax law, rather than state law, to determine the relevant property interests in the Tax Refunds was not misplaced. See *Arrowsmith v. U.S.A. (In re Health Diagnostic Lab., Inc.)*, 578 B.R. 552, 566 (Bankr. E.D. Va. 2017) ("Federal tax law governs any purported property right at issue. . . , there is clearly a countervailing federal interest because S corporation status is a creature of federal law under subchapter S of the Tax Code. State law created 'sufficient interests' in the taxpaying entity by affording it the requisite corporate and shareholder attributes. . . .").[6] The Liquidating Agent was afforded an opportunity to amend so as to plead additional facts in support of these theories. Order, *The Finley Group v. Roselli*, AP No. 17-03063 (2017) ECF No. 36. This has been done.

As to operative facts, the Original Complaint alleged the following:

•   the Debtor was a limited liability company treated as a partnership for tax purposes;

•   the Rosellis were personally liable for the payment of income taxes and that the Debtor had no tax liability;

•   the Debtor paid $704,145 from its operating account to satisfy the Rosellis' 2010 and 2011 estimated state and federal tax liabilities;

•   the Debtor was equitably subrogated to the Rosellis' rights to any eventual refunds, since the Debtor made the initial tax payments;

---

[5] In particular, the original complaint was bereft of facts that might show that RedF paid the Rosellis' prepetition taxes in order to protect a legal interest of its own, a necessary requirement for equitable subordination.

[6] Generally, federal tax law " 'creates no property rights but merely attaches consequences…' [h]owever, once 'it has been determined that state law creates sufficient interests in the [taxpayer] to satisfy the requirements of [the statute], state law is inoperative,' and the tax consequences thenceforth are dictated by federal law." *In re Health Diagnostic Lab., Inc.,* at 562 (citations omitted).

• the Rosellis amended the Debtor's tax returns on or about April 14, 2014 and obtained refunds of the taxes paid by the Debtor totaling in excess of $650,000;

• the refunded tax payments are currently in the possession of the Rosellis. Complaint, *The Finley Group v. Roselli*, AP No. 17-03063 (2017) ECF No. 1 8-11.

To these allegations, the Amended Complaint has added a further allegation that, while not legally liable to the taxing authorities for the Rosellis' personal income taxes, RedF paid its owners' tax obligations under the mistaken belief that it was compelled to do so by its own operating agreement. Amended Complaint, *The Finley Group v. Roselli*, AP No. 17-03063 (2017) ECF No. 38. Even as augmented, the Second and Third Claims remain fatally deficient.

B. The Second Claim for Relief Fails to Plead a Viable Claim for Equitable Subrogation.

North Carolina law recognizes equitable subrogation as a remedy when someone, who has (a) some liability to the creditor or (b) a legal interest he or she desires to protect, pays the debt of another person. *Harris Teeter Super Markets, Inc. v. Watts*, 387 S.E.2d 203, 205 (N.C. Ct. App. 1990). Equitable subrogation gives the paying party the rights of the creditor with respect to the true debtor. *Peek v. Wachovia Bank & Trust Co.*, 242 N.C. 1, 15, 86 S.E.2d 745, 755 (1955) ("The party who is subrogated is regarded as entitled to the same rights, and indeed as constituting one and the same person with the creditor whom he succeeds.") (citations and quotation marks omitted).

The Rosellis have argued that equitable subrogation is unavailable to the Liquidating Agent for several reasons: a) the remedy is time barred, b) the Liquidating Agent failed to (and cannot adequately) plead that RedF was not a volunteer, c) the Liquidating Agent has an adequate legal remedy (the pending avoidance litigation against

the IRS for the 2011 and 2012 tax payments), and d) the Amended Complaint failed to allege the existence of a creditor to whom the Liquidating Agent is subrogated.

### 1. The Equitable Subrogation Remedy is Time Barred.

A claim for equitable subrogation must be brought within three years of the date on which the proposed subrogee made the payment. See *Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 277 N.C. 216, 222, 176 S.E.2d 751, 756 (1970) (three-year statute of limitations of N.C.G.S. § 1-52 applies to equitable subrogation claims). Here, RedF made the tax payments in 2011 and 2012, with the last occurring on January 17, 2012. Amended Complaint, *The Finley Group v. Roselli*, AP No. 17-03063 (2017) ECF No. 38 at 9. Under N.C.G.S. § 1-52, the statute of limitations for an equitable subrogation claim would have expired January 16, 2015. RedF was forced into bankruptcy prior to that date, with an order for relief date of October 29, 2012.

Bankruptcy Code Section 108(a) affords the trustee (here, the DIP or more recently, the Liquidating Agent) the longer of any unexpired state limitations period or two years after the order for relief in which to bring a civil action. The relevant dates are thus January 16, 2015 and October 28, 2014. The Liquidating Agent commenced this action on June 2, 2017, a point well past either deadline. The Second Claim is time-barred.

### 2. The Second Claim for Relief is Not a Valid Section 542 Turnover Action

In an effort to avoid dismissal, the Liquidating Agent has argued that its Second Claim is a Section 542 Claim not subject to the three year State statute of limitations: "[e]quitable subrogation is merely one possible basis to explain the Debtor's equitable interest in the refunded tax payments, which rendered the refunds property of the estate."

Brief in Opposition to Motion to Dismiss, *The Finley Group v. Roselli*, AP No. 17-03063 (2017) ECF No. 45 at 15.

The Liquidating Agent then cites several turnover cases holding that Section 542 contains no statute of limitations period. See *Burtch v. Ganz (In re Mushroom Transp. Co., Inc.)*, 382 F.3d 325, 337 (3d Cir. 2004); *Grayson Consulting, Inc. v. Cathcart*, No. 2:07-cv-02992-DCN, 2013 U.S. Dist. LEXIS 127866, at *11 (D.S.C. Sep. 9, 2013). With no limitations period for turnover, the Liquidating Agent suggests its Second Claim is timely. There are a couple of problems with this theory.

First, the argument is circular. Both iterations of the Complaint allege that the Tax Refunds are estate property under Section 541 and are subject to turnover under Section 542. However, during the proceeding on the First Dismissal Motion, and when faced with the tax and case law discussed above that indicated the Rosellis as shareholders owned the Tax Refunds, the Liquidating Agent countered that it should nevertheless be equitably subrogated to the Rosellis' rights in those monies. Now, when faced with a state limitations period that bars an action for equitable subrogation, the Liquidating Agent doubles back to say that its claim is not just an equitable subrogation claim; it is a Section 542 action.

The Liquidating Agent's arguments are not just circular, they are flat out wrong. Because the Bankruptcy Code typically does not create property interests, the Tax Refunds are estate property only if state law or some other nonbankruptcy law has created a property interest in favor of the debtor. Here, the contention is that this property interest lies due to equitable subrogation. Unfortunately, such a cause is time barred—by the state limitations statute applicable to such causes.

Second, the Liquidating Agent's argument entirely misapprehends Section 542. Turnover under Section 542 is available only for property that is undeniably estate property. *Stanziale v. Pepper Hamilton, LLP (In re Student Fin. Corp.)*, 335 B.R. 539, 554 (D.Del.2005) (To "state a claim for turnover of property under § 542, a plaintiff must allege that transfer of the property has already been avoided or that the property is otherwise the undisputed property of the bankruptcy estate."). Turnover is not permitted where a bona fide dispute exists as to ownership of the subject property. *Dershaw v. Ciardi (In re Rite Way Elec., Inc.)*, 510 B.R. 471, 484 (Bankr. E.D.Pa.2014). Not surprisingly, turnover claims for assets which are the subject of disputed causes of action are routinely dismissed as not being ripe. See *Schlossberg v. Madeoy (In re Madeoy)*, 576 B.R. 484 (Bankr. D. Md. 2017) (citing *Pry v. Maxim Glob. Inc. (In re Maxim Truck Co. Inc.)*, 415 B.R. 346, 357 n.4 (Bankr. S.D. Ind. 2009) ("[T]he Trustee's remedy under § 542 for turnover ... only ripens upon a determination by the Court that the property in dispute is, in fact, property of the estate.")).

The Fourth Circuit has recognized these limitations to the turnover power. See *Agnew v. United Leasing Corporation*, 680 Fed. Appx. 149 (4th Cir. February 22, 2017)(unpub.). In *Agnew*, the Chapter 11 debtors sued their creditor seeking a ruling that no debt was owed to it. Prior to the bankruptcy, the debtors confessed judgment to the creditor in a forbearance agreement. *Id.* at 151-152. Among other things, the debtors' suit asserted that the creditor had subsequently breached that forbearance agreement. *Id.* The creditor moved to dismiss the breach of contract claim under Rule 12 because it was barred by the Virginia statute of limitations. Like the Liquidating Agent in this case, those debtors

argued that the State limitations period was inapplicable because (a) their claim fell under 11 U.S.C. § 542 and (b) there was no limitations period for a turnover claim. *Id.* at 154.

On appeal, the Fourth Circuit rejected these arguments, holding that "Section 542 allows for the collection of debts owed to a bankruptcy estate, but it is not meant as a substitute method for resolving contractual disputes: 'It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes <u>or otherwise demand assets whose title is in dispute</u>.' " *Id.* (quoting *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991)) (emphasis added). Because the Agnews had pled "garden-variety breach of contract" claims, Section 542 relief was unavailable. *Id.* Further because the Agnews' claim was for breach of contract, it was barred by the State statute of limitations period. *Id.*

Seen through this prism, the Liquidating Agent's Amended Complaint does not plead a valid Section 542 action. The prepetition transfers of RedF's property which paid the Rosellis' taxes have not been avoided. Ownership of the Tax Refunds, is at best in dispute, as both tax law and the relevant case law indicate that these monies belong to the Rosellis rather than the Estate.[8] In short, the Liquidating Agent's claims are not demands for turnover of undisputed estate assets. They are unliquidated state law causes of action governed by a three year statute of limitations. The equitable subrogation claim, at least,[9] is time barred.

---

[8] As opposed to avoiding the tax payment transfers as Section 548 fraudulent conveyances.

[9] The Rosellis have not argued that the Third Claim (conversion) is time barred. Timeliness of a conversion claim would depend on whether the conversion occurred when as pled, the Rosellis amended RedF's tax returns (timely), or instead much earlier when they caused RedF to pay their personal taxes. Since the same state limitations statute applies, if conversion occurred at the time of payment, this claim would also be time barred.

*3.    Claim Two Fails to Plead all of the Necessary Elements of Equitable Subrogation.*

Even if the equitable subrogation claim was viable, the Amended Complaint fails to plead its necessary elements.  Equitable subrogation is available only where a person pays the debt of another under a legal obligation or a reasonable belief that he or she is paying the debt in order to "protect[] some real or supposed right or interest of his own." *Jamestown Mut. Ins. Co.*, 176 S.E.2d at 755.  Volunteers have no right to equitable subrogation.  *Progressive Am. Life Ins. Co., Inc. v. Geico Gen'l Ins. Co.*, 637 S.E.2d 282, 284 (N.C. Ct. App. 2006).

The Amended Complaint admits that RedF had no legal obligation to the State or the IRS on account of the Rosellis' income tax obligations.  Amended Complaint, *The Finley Group v. Roselli*, AP No. 17-03063 (2017) ECF No. 38 at 6-8 ("the applicable tax codes did not legally obligate [RedF] to pay the Rosellis' personal federal and state income taxes…." and the "income or loss passed through to the Rosellis for [income] tax purposes.").

Seeking to demonstrate that RedF was protecting its own legal interests when it paid the Rosellis' taxes, the Amended Complaint cites Dan Roselli's mistaken belief that the Operating Agreement required this act.  *Id.* at 8.  This averment is legally insufficient.  The obligation imposed by the Operating Agreement was owed by RedF to its members, not to the taxing authorities.  However, equitable subrogation is unavailable to those who act without compulsion <u>relating to the original creditor </u>unless they do so in the good faith belief that they had such an interest or obligation.  *Jamestown Mut. Ins. Co.*, 176 S.E.2d at 755–56 (emphasis added).  RedF had no belief that it had any legal exposure to the taxing

authorities on account of the Rosellis' taxes. As to the taxing authorities, RedF was but a volunteer. Thus, equitable subrogation does not lie.

Furthermore, the explanation pled by the Liquidating Agent is objectively untenable. Since the Rosellis owned and operated RedF, and were the beneficiaries of the obligation imposed by the Operating Agreement as well, one must ask, what possible legal consequences could RedF have faced had it had failed to pay the Rosellis' taxes? The answer indisputably is none. The Rosellis, as shareholders, could hardly sue RedF, the company they owned and operated, for failing to pay their personal tax debts. The Rosellis are on all sides of the Operating Agreement, making the tax obligation legally and practically unenforceable. Even accepted as true, the pled facts do not support a reasonable inference that the Rosellis had a "good faith belief" that by paying the Rosellis' taxes, RedF was protecting its own legal interests or obligations.

Not surprisingly, the Liquidating Agent has cited no opinion holding that equitable subrogation is proper under facts similar to these.

4. *Even if Equitable Subrogation were Available to the Estate, it would not Support a Claim to the Tax Refunds.*

A final reason exists to deny the Second Claim for relief. The Amended Complaint asserts that the Estate is subrogated, not to the <u>taxing authorities' original tax claims against the Rosellis</u>, but instead to <u>the Rosellis' interest in the Tax Refunds</u>. Even if equitable subrogation lay, this would appear improper.

As noted above, equitable subordination places the payor of a third party's debt in the position of the original creditor as against the original debtor. In this case, if the doctrine applied, and it does not, the Estate would be subrogated to the taxing authorities' rights against the Rosellis for their personal taxes, not directly to the Rosellis' interest in

the Tax Refunds. The latter, of course, arose only after the Rosellis' amended the tax returns. And we now know that upon amendment, those taxing authorities concluded that at least as to the $650,000+ no debt was owed as they issued the Tax Refunds to the Rosellis. If subrogated to the taxing authorities' position, the Liquidating Agent would arguably be in the same position.[10]

The Second Claim is subject to dismissal for all four reasons.[11]

**III.  The Third Claim for Relief (Conversion) is Subject to Dismissal for Failure to Adequately Plead an Ownership Interest in Property.**

The Third Claim also suffers from pleading deficiencies. A claim for conversion requires the plaintiff to allege and "prove that it retained lawful ownership in the chattel and a right to immediate possession." *Variety Wholesalers Inc. v. Salem Logistics Traffic Servs., LLC*, 712 S.E.2d 361, 365 (N.C. Ct. App. 2011) rev'd, 365 N.C. 520, 723 S.E.2d 744 (2012) (citation omitted). A plaintiff must allege ownership of the chattel that was allegedly converted. *Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.*, 665 S.E.2d 478, 489 (N.C. Ct. App. 2008). Here, the Liquidating Agent has failed to describe any legal property interest the Estate might possess in the Tax Refunds.

The Liquidating Agent instead makes the conclusory allegation that since the Rosellis' 2010 and 2011 taxes were paid with the Debtor's funds, it would be inequitable for the Rosellis to retain them as opposed to the Estate. Amended Complaint, *The Finley Group v. Roselli*, AP No. 17-03063 (2017) ECF No. 38 at 9. Said otherwise, the

---

[10] While the Liquidating Agent has been careful in its complaints to seek recovery of the Tax Refunds, those refunds would necessarily have been based upon the pre-petition tax payments which cannot be recovered from the Rosellis because of the Plan's release and some unpled tax attribute, which belongs to the Rosellis.

[11] Because the equitable subordination count in Claim Two is dismissed as stated above, we need not consider the Rosellis' alternative arguments that the claim is precluded due to the existence of an adequate legal remedy (the pending avoidance actions against the State and the IRS) or for lack of an identified creditor.

Liquidating Agent has pled that RedF had an "equitable interest in any refund of the Tax Payments in a constructive trust for the Debtor's benefit." *Id.*

The first problem with the Liquidating Agent's claim is that it appears contrary to applicable tax law, which deems these tax attributes to belong to the shareholders, not their company.

The Second problem is that the only identified equitable interest claimed by RedF in the Amended Complaint is one created by equitable subrogation, and for the reasons stated above, equitable subrogation is not a viable cause of action.

Finally, under North Carolina law, even a recognized equitable interest may not be sufficient to support a claim for conversion. The only case cited by the parties bearing on this question says it is not, at least as to titled vehicles. See, *Jenkins v. Aetna Casualty & Surety Co.*, 378 S.E.2d 773, 776 (N.C. 1989) (an automobile insurance company was not liable for injuries suffered by a passenger in the automobile because the purchaser failed to transfer title to his name and thus did not "'own' the vehicle within the terms of the liability insurance policy."). Admittedly, this is not a vehicle ownership claim, and one would not base a decision on this point alone. That said, conversion is a long-recognized state law cause of action, and the cases construing the cause are legion. Nevertheless, the Liquidating Agent cited no cases under North Carolina law, basing a right to conversion on an undefined, unliquidated equitable theory, where the asset in question is created and defined by comprehensive statutory schemes like the Federal and State Tax Codes.

For these reasons, the Third Claim fails to state a claim for conversion and must be dismissed.

**Conclusion**

Under normal circumstances, the Liquidating Agent might have sued the Rosellis as beneficiaries, initial transferees, or even the subsequent transferees of the allegedly fraudulent tax payments that are presently being sought from the IRS.[12]  Alternatively, the Liquidating Agent might have sued the Rosellis for conversion of the monies in RedF's prepetition bank account, which the Rosellis used to pay their taxes.  These payments may even have constituted illegal dividends under N.C. Gen. Stat. § 55-6-40 given RedF's poor financial condition.  However, because the Plan released all preconfirmation claims against the Rosellis, any such endeavor is foreclosed.

Instead, the Liquidating Agent chose to sue the taxing authorities.  While it reached settlement with the State, its clawback action against the IRS has been met with stiff resistance.  It remains to be seen whether that action will bear fruit.  It also remains to be seen whether the actions of the Rosellis, described in Claim 1, give rise to a damages claim in favor of the Estate.

However, what is presently clear is that the Liquidating Agent holds no Section 542 Turnover claim against the Rosellis, has no recognized interest in the Tax Refunds, and has no viable state law claims based upon equitable subrogation or conversion.  Therefore, the Second and Third Claims must be dismissed with prejudice.

The Scheduling Order entered in this adversary proceeding on September 13, 2017, as amended on October 12, 2017, is further amended to release the stay of proceedings in this action. A like order will be entered in Adv. Pro. No. 14-3266, the presently stayed action against the IRS.

---

[12]The same would be true for the State, but for the settlement of Adv. No. 14-3267 referenced above.

The Rosellis are directed to file an answer to the remaining counts of the Amended Complaint by no later than fourteen (14) days from the entry date of this order.

A status and scheduling hearing will be held in this adversary proceeding on August 14, 2018 to address the Rosellis' pending Motion to Disqualify Plaintiff's Counsel and the Liquidating Agent's Rule 11 Motion against the Defendants.

**SO ORDERED**.

This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order.

United States Bankruptcy Court