FILED & JUDGMENT ENTERED
Steven T. Salata

October 21 2019

Clerk, U.S. Bankruptcy Court
Western District of North Carolina



J. Craig Whitley
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **RedF Marketing, LLC,** | ) | **Chapter 11** |
| | ) | **Case No. 12-32462** |
| Debtor. | ) | |
| | ) | |
| | ) | |
| _____ ) | ) | |
| | ) | |
| **The Finley Group, Liquidating Agent** | ) | |
| **For RedF Marketing, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Adversary Proceeding** |
| v. | ) | **No. 17-03063** |
| | ) | |
| **Daniel J Roselli and Sara Garces Roselli,** | ) | |
| | ) | |
| Defendants. | ) | |
| _____ ) | ) | |

## ORDER DENYING MOTION TO DISQUALIFY AND GRANTING MOTION FOR SANCTIONS

This matter is before the Court on the Motion by Daniel J. Roselli and Sara Garces

Roselli to Disqualify Andrew M. Houston and Moon Wright & Houston, PLLC (the "Motion

to Disqualify") (AP no. 1703063, docket no. 4) filed by Daniel J. Roselli and Sara Garces

Roselli (collectively, the "Rosellis") and the Motion for Sanctions (AP no. 17-03063, docket

no. 20) filed by The Finley Group, the liquidating agent for RedF Marketing, LLC (the

"Liquidating Agent") and Moon Wright & Houston PLLC ("MWH," together with the Liquidating Agent, the "Plaintiff"). Having considered the parties' briefs and oral arguments, this Court concludes that the Motion to Disqualify must be denied, while the Motion for Sanctions must be granted.

## BACKGROUND

The factual circumstances giving rise to these competing motions, are novel, almost unique, and could not have been anticipated by either side.  Given this, one might have expected the two sides to have approached these disputes with a measure of equanimity or, at the least, an appreciation for the other side's positions.  Instead, the several post-confirmation disputes between the Rosellis and the Liquidating Agent have been characterized by outrage, arrogance, and an escalation of assaults upon one another, culminating in today's motions.  Here, the Rosellis' seek to disqualify the Liquidating Agent's counsel for purported conflicts of interest, whereas the Liquidating Agent would have the Rosellis and their counsel sanctioned for having made the attempt.  The present pleadings are more about vitriol and one-upmanship than fact or legal principle.  But, at the risk of dignifying the undignifiable, against this backdrop, we will consider the two motions.

Given the lengthy prior proceedings in this case, a summation of what has already occurred is helpful to frame the current disputes.

### A.  RedF's Retention of Moon Wright & Houston, PLLC.

Prior to bankruptcy, RedF (the "Debtor" or "DIP" or "Debtor in Possession") was a North Carolina limited liability corporation operated by member/managers Dan and Sara Roselli.  After losing a trademark infringement action in U.S. District Court, RedF was forced into an involuntary bankruptcy case by its creditor on October 12, 2012. *See Bridgetree, Inc.*

*et al. v. Redf Marketing, LLC, et al.*, Case No. 10-CV-00228.  Rather than contest the involuntary petition, RedF entered bankruptcy and converted to Chapter 11 in order to act as a debtor in possession—a role akin to that of a trustee.  *See* 11 U.S.C. § 1104.  RedF engaged MWH pursuant to the terms of a written engagement letter agreement (the "Engagement Agreement") to represent it under section 327(a) as debtor in possession.  Prior to that time, MWH had never represented RedF, the Rosellis, or any other entity owned or operated by the Rosellis.

The Engagement Agreement explicitly provided that MWH's "representation does not extend to the owners, employees, officers, directors, members, shareholders, managers. . .  Such persons or entities must secure separate counsel. . . ."  Consequently, Grier Furr & Crisp PA ("Grier") filed a notice of appearance on behalf of "Dan Roselli individually" and Erwin, Bishop Capitano & Moss, P.A. ("Erwin Bishop") filed a notice of appearance on behalf of Sara Roselli and certain affiliates of the Rosellis.  Both firms remain as counsel of record in this case.

On November 12, 2012, RedF filed its application to employ MWH as counsel for the Debtor in Possession (the "Retention Application").  Case no. 12-32462, docket no. 41.  The Retention Application specifically represented that "MWH does not hold or represent any interest adverse to [RedF's] estate, and MWH is a 'disinterested person.'"  *Id*.  The Retention Agreement acknowledged that "MWH has not represented [RedF's] creditors, equity security holders, or any other parties in interest. . . ."  *Id*.  The Retention Application was signed by Dan Roselli on behalf of RedF.

On November 14, 2012, the Court entered its Order Authorizing the Retention and Employment of Moon Wright & Houston, PLLC as Bankruptcy Counsel (the "Retention

Order"). Case no. 12-32462, docket no. 46. The Retention Order concluded that "the attorneys at MWH (i) represent no interests adverse to this case. . . , [and] (ii) are disinterested persons as that term is defined under section 101(14) of the Bankruptcy Code. . . ." *Id.*

### B. Representation of the Rosellis During the Chapter 11 Case.

Consistent with the foregoing, RedF's owners, the Rosellis, were individually represented by separate counsel during the pre-confirmation stages of the bankruptcy case. The record reflects that the Rosellis were aware that MWH did not represent their personal interests. Specifically, on July 11, 2016, Sara Roselli testified under oath that Grier represented Dan Roselli and Erwin Bishop represented her during the confirmation process. The following day, Dan Roselli testified under oath that he was represented by Grier, RedF was represented by MWH, and Sara Roselli was represented by Erwin Bishop. Both Rosellis were represented by their present counsel attorney Brad Pearce ("Pearce") during their post-confirmation testimony.[1] And, in a June 5, 2015 letter to Andy Houston ("Houston") of MWH, Pearce acknowledged that MWH never represented the Rosellis.

### C. Confirmation of a Consensual Plan.

After lengthy negotiations, RedF confirmed a consensual plan of liquidation on April 29, 2013 (the "Plan"). Case no. 12-32462, docket no. 69; Case no. 12-32462, docket no. 150; Case no. 12-32462, docket no. 155. The Order Confirming Modified Plan reflects that the Rosellis were represented by Grier and Erwin Bishop, respectively, at the confirmation hearing. Case no. 12-32462, docket no. 188.

Under the Plan, many of the estate's assets were sold to a third party. The Rosellis' ownership interests in RedF were cancelled and RedF ceased to exist as an entity. A

---

[1] Although individually represented pre-confirmation, the Rosellis were jointly represented after the Plan was implemented.

Liquidating Agent[2] was appointed to administer the remainder, primarily transfer avoidance actions under Chapter 5 of the Bankruptcy Code.  Mutual releases of claims were exchanged between the Rosellis and the estate.  And with this, the Rosellis' involvement in the bankruptcy case should have been over.

Meanwhile, on May 9, 2013, MWH filed a final fee application related to its representation of RedF (the "Final Fee Application").  Case no. 12-32462, docket no. 193. The Final Fee Application sought final approval of all fees and expenses of MWH as counsel to RedF during the period from October 24, 2012 through May 9, 2013.  No objections were lodged to the Final Fee Application.  On May 28, 2013, the Court entered its Order Granting Final Application for Compensation to Moon Wright & Houston, PLLC (the "Final Fee Order").  Case no. 12-32462, docket no. 196.

### D. The Liquidating Agent's Post-Confirmation Retention of Moon Wright & Houston, PLLC.

Three months later, on July 24, 2013, the Liquidating Agent filed an application seeking to employ MWH as its counsel to represent it in the activities contemplated by the confirmed plan (the "Second Retention Application").  Case no. 12-32462, docket no. 220. The Second Retention Application provided that MWH would represent the Liquidating Agent in "the pursuit of avoidance actions, other claims avoidance, recovery, and/or subordination. . . ." It further alleged that "MWH does not hold or represent any interest adverse to [RedF's] estate, and MWH is a 'disinterested person'. . . ."

---

[2] The Plan gave the Liquidating Agent the powers of a bankruptcy trustee.  Case no. 12-32462, docket no. 69.

The Second Retention Application was filed on an *ex parte* basis.[3]  Out of an abundance of caution, the Court set the matter on for hearing to consider the "potential conflict of interest inherent in having former counsel for a DIP representing a Plan Liquidating Agent." Case no. 12-32462, docket no. 226.  The hearing notice was served on key parties, including Dan Roselli and his counsel.  The Rosellis did not object to the Liquidating Agent's retention of MWH—nor did anyone else.  No other parties appeared at hearing.

After exploring the retention issue on the record with MWH, the undersigned was satisfied that no impediment existed to former DIP counsel serving the Liquidating Agent, in performing its post-confirmation responsibilities under the Plan.  On August 21, 2013, an order approving the Second Retention Application (the "Second Retention Order") was entered in the base case.  Case no. 12-32462, docket no. 233.  This order held that MWH is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and authorized the retention of MWH pursuant to Section 327(a) of the Bankruptcy Code.  *Id.* No appeals were taken, and the Second Retention Order is final.

### E.  The Rosellis Unexpected Return to the Case

A year later, in September 2014, and as contemplated by the Plan, the Liquidating Agent began filing avoidance actions against third parties.  Case no. 12-32462, docket no. 188.  Several of these actions sought to recover prepetition transfers of property made by RedF to third parties for the benefit of the Rosellis or their other businesses.  In what was then an unprecedented tactic in this judicial district, the transfer defendants filed third party complaints against the Rosellis.  They argued that if these transfers were avoided, then the Rosellis were liable to themselves for

---

[3] The Bankruptcy Rules do not require notice of such an application to creditors and parties in interest, although it is generally prudent that notice be given.

the underlying debts.  *See* AP no. 14-03267, docket no. 24.        With this, the Rosellis

reentered the case, aggressively.   The Rosellis organized defense efforts in those adversary

proceedings seeking to prevent the Trustee from recovering from the transfer defendants.   And,

notwithstanding the Plan and their mutual releases with the estate, the Rosellis reasserted monetary

claims against the bankruptcy estate.   These developments created tension between the Liquidating

Agent and the Rosellis and began the unseemly "push and shove" tactics leading to the present

motions.

       During this period, the Liquidating Agent was represented by MWH; whereas the Rosellis

were jointly represented by Pearce.   During these proceedings, the litigation positions of the

Liquidating Agent and the Rosellis were directly adverse to one another.   Yet, the Rosellis never

took issue with MWH's representation of the Liquidating Agent.   For instance, in September and

October 2014, the Rosellis filed objections to settlements of avoidance actions the Liquidating

Agent reached with third parties.   Case no. 12-32462, docket nos. 349 and 350.   The Liquidating

Agent, through MWH, informed Pearce that the Rosellis' objections lacked any justifiable basis,

and threatened sanctions if they were not withdrawn.   The Rosellis withdrew those objections.

They asserted no conflicts of interest or ethical issues as against the Liquidating Agent's counsel.

       In another avoidance action, the Rosellis sought dismissal of the Liquidating Agent's

underlying complaint.   *See, e.g.,* AP no. 14-3254, docket no. 32.   The Liquidating Agent

vigorously opposed their motion.   On April 20, 2015, a hearing was held on the motion in

which the Rosellis and the Liquidating agent were once again directly adverse to each other.

Again, the Rosellis asserted no conflict of interest or ethical issue on the part of MWH.

       In yet another adversary proceeding, the Packard Place AP, the Liquidating Agent

and the Rosellis, along with others, reached a settlement.   As part thereof, the Rosellis agreed

to pay the estate $270,000 secured by a note and a confession of judgment. Again, no conflict or ethical issue was asserted.

### F. The Present Action

Tensions between the two sides reached a boiling point, when on April 14, 2014, and without notice to the Liquidating Agent, the Rosellis took it upon themselves to amend RedF's state and federal tax returns for tax years 2010 and 2011, and presumably their personal returns.[4] AP no. 17-03063, docket no. 1. As a result, the Rosellis received tax refunds totaling approximately $650,000.00 (the "Tax Refunds"), a fact which was also not disclosed to the Liquidating Agent. AP No. 17-03063, docket no. 38.

After learning of these events, the Liquidating Agent viewed the Rosellis' actions as an outright theft of estate property, for two reasons. First, the amendments to the corporation's returns were made almost a year after the Plan Effective Date. That event had terminated the Rosellis' interests and control rights in RedF. Second, at the time of amendment, the Liquidating Agent was seeking return of these same monies from the IRS in a Section 548 clawback action (The Rosellis' personal income taxes had been paid before bankruptcy by RedF).

The Liquidating Agent filed the present action against the Rosellis (the "Original Complaint") on June 21, 2017. AP no. 17-03063, docket no. 1. The Original Complaint reflects the Liquidating Agent's outrage. It sought relief against the Rosellis for a variety of alleged post-confirmation wrongs against the estate. However, the most significant claim pertains to the Tax Refunds. First, the Original Complaint asserted that the Rosellis' amendment of RedF's tax returns constituted a willful violation of the Plan and also the plan

---

[4] RedF was a limited liability company and, for tax purposes, a "passthrough" entity. *See* Case no. 12-32462, docket no. 52.

injunction. *Id.* Second, the Liquidating Agent demanded turnover of the Tax Refunds under Bankruptcy Code Section 542. *Id.* Third, the Liquidating Agent asserted state law claims against the Rosellis for conversion of the Tax Refunds and the imposition of a constructive trust. Both causes assert that these monies belonged to the bankruptcy estate. *Id.*[5][6]

### G. The Motion to Disqualify

Although it should have been expected, the filing of this lawsuit pushed the Rosellis (and their counsel) over the edge. On June 23, 2017, the day after the Original Complaint was filed, Pearce, contacted the Undersigned's Chambers to request a conference call with the parties to discuss the "resulting publicity" associated with the complaint and an ongoing mediation effort. During that conference call, Pearce contended that there was too much emotional scarring and too many hurt feelings to resolve the dispute and that "all hell was going to break loose." His forecast was accurate.

On July 7, 2017, an article was published by the Charlotte Business Journal in which Dan Roselli made several ad hominin attacks against MWH and its attorneys. For instance, Dan Roselli said "[w]e are deeply concerned about the ethics of Mr. Houston and his firm given the actions that he has taken in this case. Our complaint to the bar association will more fully outline these concerns." No bar grievance was then pending, but clearly one was contemplated by the Rosellis.

On July 10, 2017, the Rosellis filed the Motion to Disqualify against MWH. The Motion to Disqualify was signed by Pearce on the Rosellis' behalf.

---

[5] The Liquidating Agent filed an Amended Complaint on October 26, 2017 (the "Amended Complaint"). AP no. 17-03063, docket no. 38. The Amended Complaint is substantially similar to the Original Complaint but contains a few new averments to support the Estate's ownership contentions as to the Tax Refunds.

[6] It should be noted that, in another question of first impression, this Court held that the tax refunds actually belonged to the Rosellis, not the Estate. AP no. 17-03063, docket no. 52.

In the Motion to Disqualify, the Rosellis argue for the first time that Houston should be disqualified from representing the Liquidating Agent because: 1) the representation of the Liquidating Agent is adverse to his former clients, the Rosellis; 2) he is a necessary witness to disputed facts in this action; and 3) he had engaged in professional misconduct in this bankruptcy case. AP no. 17-03063, docket no. 4. In support of this allegation, the Rosellis point to several exchanges between Houston and the Rosellis.

First, the Rosellis contend that Houston gave Sara Roselli legal advice about her responsibilities as the manager of RedF—an act which the Rosellis view as constituting personal legal advice. Specifically, the Rosellis point to an email exchange, prior to MWH's withdrawal as counsel for RedF, between Houston and Sara Roselli in which Houston states:

> I have actually reviewed the operating agreement that you sent to me and Articles 9.1 and 9.2 make it fairly clear that you are the manager of RedF with unilateral decision making authority except for certain unspecified events that require the vote of all members. Even assuming a vote was necessary you would seem to have the controlling vote as the majority member of the LLC [i.e., RedF] in any event.

Second, the Rosellis allege that Houston advised them on numerous instances post-confirmation. Specifically, the Rosellis rely on an email sent from Houston to Dan Roselli on May 1, 2013, in which Houston informed Dan Roselli a) that he is not the manager for RedF; b) that he was acting in violation of the confirmation order; c) that he was jeopardizing personal benefits; and d) that he and Sara Roselli were possibly breaching fiduciary duties (to the bankruptcy estate and creditors).

Third, the Rosellis allege that Houston created a direct conflict with the Rosellis prior to filing the complaint when, in connection with motions to dismiss certain adversary proceedings, he disputed statements made in the Rosellis' affidavits. Consequently, the Rosellis contend that Houston is a witness to a factual matter at issue in this adversary proceeding.

Fourth, the Rosellis allege that Houston engaged in professional misconduct during a deposition in February 2017, when he tried (via statements to counsel) to "extort a settlement from the Rosellis in exchange for assurances that he would not disclose sensitive personal email." AP no. 17-03063, docket no. 4.

On the heels of the Rosellis' Motion to Disqualify, on August 14, 2017, Pearce filed a state bar grievance against Houston.

### H.  The Motion for Sanctions

Fighting fire with fire, on August 31, 2017, the Liquidating Agent responded to the Rosellis' attacks by filing the Rule 11 motion against the Rosellis and Pearce. AP no. 17-03063, docket no. 20. In it, the Liquidating Agent argues that Rule 11 sanctions are appropriate because 1) the Motion to Disqualify was filed to impugn opposing counsel (with no intent to pursue it); 2) the Motion to Disqualify is not supported by existing law; and 3) the allegations in the Motion to Disqualify have no evidentiary support.

Subsequently, around September 2018, Houston filed a state bar grievance against Pearce. *See* AP no. 17-03063, docket no. 70.

## LEGAL ANALYSIS

### I.    DISQUALIFICATION

Motions to disqualify are serious matters that are considered on a case-by-case basis. *Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 514, 516 (M.D.N.C. 1996). While courts have the inherent ability to suspend or disbar lawyers, "specific guidance is provided by case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *In re Snyder*, 472 U.S. 634, 643-645 (1985); *see also* Restatement (Third) of the Law Governing Lawyers § 1 (2000); *In re Weiss*, 111 F.3d 1159, 1171 (4th Cir. 1997) ("A federal court

also possesses the inherent power to regulate [attorneys'] behavior and to sanction [attorneys] for bad-faith conduct."). Importantly, "[t]he Fourth Circuit disapproves of a 'mechanical and didactic' application of the disciplinary rules and instead seeks analysis of the harm to the parties before the court." *Plant Genetic Sys., N.V.*, 933 F. Supp. at 516 (citation omitted).

In considering motions to disqualify, courts balance "(1) a party's right to his choice of counsel and the substantial hardship resulting from disqualification against (2) the importance of safeguarding the public trust in the judicial system." *Danzig Ltd. v. Inception Mining Inc.*, No. 5:17-CV-000180RLV-DSC (W.D.N.C. June 13, 2017) (citation omitted). In an attempt to prevent the appearance of impropriety and maintain public trust in the judicial system, courts emphasize that "the client's perception of events is of paramount importance. . . . [and] 'where a reasonable client would be concerned by a potential conflict, a court must err on the side of disqualification.'" *Chemcraft holdings Corp. v. Shayban*, 2006 NCBC 13 ¶ 34 (N.C. Super. Ct. Oct. 5, 2006) (quoting *Healthnet, Inc. v. Health Net, Inc.*, 289 F. Supp. 2d 755, 758 (S.D. W. Va. 2003).

Courts are cautioned, however, of the "possibility of misuse of disqualification motions for strategic reasons." *Plant Genetic Sys., N.V.*, 933 F. Supp. at 517 (citation omitted). And, motions to disqualify "cannot be based on imagined scenarios of conflict, and the moving party has a high standard of proof to meet in order to prove that counsel should be disqualified." *Id.* (citation omitted).

Bankruptcy attorneys are subject to dual regulation. Specifically, attorneys appearing in a bankruptcy case must adhere to the dictates of the Bankruptcy Code and orders of the Bankruptcy Court. However, as members of the State Bar, these attorneys are also subject to the State Rules of Professional Conduct.

As to the former, 11 U.S.C. § 327 governs the employment of professional persons by the bankruptcy estate.  Specifically, Section 327 authorizes trustees, including Chapter 11 debtors in possession, to retain attorneys to "assist the trustee in carrying out the trustee's duties. . . ." 11 U.S.C. § 327(a).  A trustee or debtor in possession, with court approval, may employ attorneys that: "1) are disinterested persons, and 2) do not hold or represent an interest adverse to the estate." *In re Escalera*, 171 B.R., 107, 109 (Bankr. E.D. Wash. 1994).   Under this standard, the representation cannot extend to third parties such as individual shareholders, owners, or others whose interests may be adverse to the estate.

The Rosellis' Motion to Disqualify fails to cite any legal authority governing the employment and retention of bankruptcy professionals under 11 U.S.C. § 327(a).  Nor does it assert a violation of any other applicable Bankruptcy Code section.  Instead, the Rosellis seek disqualification pursuant to the North Carolina Rules of Professional Conduct.  *See* AP no. 17-03063, docket no. 4.

In North Carolina, where the moving party seeks to disqualify an attorney due to a conflict, the moving party must establish "(1) an attorney-client relationship existed with the alleged former client; and (2) the former representation and the current controversy must be substantially related." *Plant Genetic Sys., N.V.*, 933 F. Supp. at 517 (citations omitted).  If a party is able to establish the foregoing, an irrebuttable presumption arises such that an attorney and its firm must be disqualified. *Id.* (citation omitted).

Alternatively, under specific circumstances, an attorney may be disqualified if he is a necessary witness to disputed facts.  N.C. R. Prof. C. 3.7.  Or, an attorney may be disqualified from representation due to a "breach of duty owed to the lawyer's client or to a nonclient."   This

argument may be raised regardless of whether or not an attorney-client relationship exists with a former client.

### A. Attorney-Client Relationship.

As noted above, generally, the party seeking disqualification must first establish an attorney-client relationship with the attorney in question. *Plant Genetic Sys., N.V.*, 933 F. Supp. at 517 (citing *In re Chantilly Const. Corp.*, 39 B.R. 466, 469 (Bankr. E.D. Va. 1984); *see also* Restatement (Third) of the Law Governing Lawyers § 6 (2000) ("[S]tanding to seek disqualification ordinarily [is] limited to present or former clients."). The Rosellis, however cannot establish that any such relationship existed.

Although Section 327 ultimately controls this issue, Rule 1.13 of the North Carolina Rules of Professional Conduct generally defines who a corporate attorney represents. It provides that "[a] lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents. N.C. R. Prof. C. 1.13(a). The official comments to Rule 1.13 make it clear that the organization is the client, not its constituents. For example, Comment 2 to Rue 1.13 provides:

> When one of the constituents of an organizational client communicates with the organization's lawyer in that person's organizational capacity, the communication is protected by Rule 1.6. . . . **This does not mean, however, that constituents of an organizational client are the clients of the lawyer.**

N.C. R. Prof. C. 1.13(a), Comment 2 (emphasis added).

As required by Section 327(a) and consistent with Rule 1.13, MWH represented RedF, the debtor in possession, and not the Rosellis. The Rosellis and Pearce admit as much. For instance, Dan Roselli and Sara Roselli testified separately that each was represented individually in the bankruptcy case by counsel other than MWH. Furthermore, the Engagement Agreement between MWH and RedF explicitly provided that MWH's "representation does not extend to the owners,

employees, officers, directors, members, shareholders, managers. . . Such persons or entities must secure separate counsel. . . ." The Retention Application specifically provided that "MWH does not hold or represent any interest adverse to [RedF's] estate, and MWH is a 'disinterested person.'" Case no. 12-32462, docket no. 41. The Rosellis did not oppose the Retention Application. In fact, the Retention Application was signed by Dan Roselli on behalf of RedF.

The Retention Order appointed MWH to represent RedF as debtor in possession. It did not include the Rosellis in that representation. Nor could it.

Similarly, the Rosellis did not oppose the Second Retention Application seeking appointment of MWH to represent the Liquidating Agent, which, by the way, was set for hearing to consider any conflict issues.[7] Dan Roselli received notice of that hearing but did not attend it and did not object to the Liquidating Agent's retention of MWH.[8] After the hearing this Court concluded that the retention was permitted, and entered the Second Retention Order. The Rosellis did not appeal, and that order is also final.

Despite their previous clear and unequivocal statements and actions to the contrary, the Rosellis now belatedly suggest that they are former clients of MWH such that the firm should be precluded from representing the Liquidating Agent in this action and case. The Rosellis found their assertion on statements made by Houston to Sara Roselli during the pre-Plan consummation period of the case. The Rosellis suggest these statements are equivalent to legal advice to the Rosellis such that the Rosellis were, or reasonably assumed they were, actually clients of MWH.

---

[7] While former attorneys for creditors committees often serve as attorneys to liquidating trustees under a plan, and to a lesser extent, former Chapter 11 trustees have served, this was the first occasion that the Undersigned can recall where former counsel to the debtor in possession was proposed to represent a liquidating agent. Thus, in order to consider the circumstances and the possibility of conflicts, the matter was noticed for hearing. Based on the circumstances presented, there was no actual conflict.

[8] It does not appear Sara Roselli was served. However, she knew of the motion and the Liquidating Agent was adverse to her but Sara Roselli did not object.

Given the attendant circumstances, this Court does not accept that the Rosellis really believed MWH represented them. The Rosellis' sworn testimony contradicts any claim that they may have believed so. Even if they did, it was an objectively unreasonable belief. And in fact, the communications to which the Rosellis cite show MWH acting as corporate counsel for RedF and interacting with the Rosellis, the corporation's managers, in regard to bankruptcy case matters involving the DIP. No personal legal advice is contained therein.

Apparently realizing their lack of an attorney-client relationship, the Rosellis later shifted their contentions towards the assertion that MWH should be disqualified due to the misconduct by Houston not as their counsel but as that of the Liquidating Agent. *See* AP no. 17-03063, docket no. 92. Specifically, they contend that Houston inappropriately 1) disclosed Dan Roselli's personal emails during mediation,[9] 2) engaged in an inappropriate series of questioning during a July 12, 2016 deposition of Dan Roselli, and 3) retained Dan Roselli's emails in violation of the Stored Communications Act. The Rosellis argue that Houston lacked any valid purpose in engaging in the abovementioned behavior. Rather, they assert Houston's intent was to harass and embarrass the Rosellis.

The Rosellis seek support for these arguments in the Restatement (Third) of the Law Governing Lawyers. Specifically, Section 6 provides that an attorney may be disqualified from representation due to "breach of a duty owed to the lawyer's client or to a nonclient. . . ." Restatement (Third) of the Law Governing Lawyers § 6 (Am. Law Ins. 2000). However, comment i to Section 6 goes on to urge that "standing to seek disqualification ordinarily be limited **to present or former clients. . . .**" and if a party "fails to take reasonably prompt steps to object or to seek a remedy, disqualification may be precluded." *Id*. (emphasis added).

---

[9] These were located on the RedF servers and email system.

As previously noted, the Rosellis are neither clients nor former clients of MWH and Houston.  Even if they were, the Rosellis have waited an inordinate amount of time before seeking disqualification such that disqualification should be precluded—if not estopped by prior orders in this case/proceeding.

Here, post-confirmation, post-release, the Rosellis are not even parties in interest to the bankruptcy case under Section 1109(b).  Rather, they are litigation opponents of the estate, currently being hailed into court based on actions occurring long after MWH's representation of RedF ended.  Thus, they do not appear to have standing under applicable law to contest the Liquidating Agent's choice of counsel.

Assuming for the moment that the Rosellis have standing to seek disqualification of the Liquidating Agent, under the Rules of Professional Responsibility disqualification would also be inappropriate.  First, the Rosellis have failed to show how the emails are not relevant as either impeachment or substantive evidence.  Evidence of a repeated falsity of a key witness's testimony regarding transactions is relevant in fraudulent transfer litigation.  Moreover, these disclosures were limited to Houston advising Pearce, Dan Roselli's counsel, of their existence.  Second, the line of questioning in the July 2016 deposition in *The Finley Group v. 222 South Church Street, LLC, et al.* is not misconduct at a level that would warrant disqualification.  One can appreciate Houston's incredulity when Dan Roselli blatantly testified that the District Court ruled in his/RedF's favor in the Bridgetree litigation, when the opposite was demonstratively true.  However, attacking the witness' credibility, as Houston did by asking Dan Roselli about possible mental health treatment, is heavy handed and beneath counsel.  Houston is admonished to restrain himself on future occasions for making ad hominin attacks of witnesses in the guise of deposition questions.

Even so, disqualification should be limited to instances where "less-intrusive remedies are not reasonably available." *Id.* And, here, the costs associated with disqualification far outweigh any arguable misconduct engaged in by MWH and Houston.

### B. Necessary Witness to Disputed Facts.

Under Rule 3.7 of the North Carolina Rules of Professional Conduct, a lawyer may be disqualified if he is a necessary witness. Rule 3.7 provides:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

N.C. R. Prof. C. 3.7(a).

Attorney testimony is "necessary" under the Rule only when that testimony "'is relevant, material, and unobtainable by other means.'" *State. v. Smith*, 749 S.E.2d 507 (N.C. Ct. App. 2013) (quoting *State v. Rogers*, 219 N.C. App. 296, 304, 725 S.E.2d 342, 348 (2012)). Motions to disqualify a lawyer pursuant to Rule 3.7 are viewed with disfavor as they can often be used in an effort to harass. *Metro. P'ship, Ltd. V. Harris*, No. CIV. A. 3:06CV522-W, 2007 WL 2733707, at *2 (W.D.N.C. Sept. 17, 2007) (citing *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982)). Accordingly, a lawyer should only be disqualified under this rule if "(1) the attorney will give evidence material to the issues to be determined, (2) the evidence **cannot be obtained elsewhere**, and (3) the testimony is prejudicial or may be prejudicial to the testifying attorney's client." *Id.* (emphasis added) (citation omitted).

The Rosellis' fail to identify any fact of consequence in the adversary proceeding to which Houston is the only witness with personal knowledge. While the Rosellis allege that Houston "has made himself a witness to allegations made in the Complaint[,]" they ignore the obvious: the Rosellis and Pearce are also witnesses to the allegations made in the complaint. Therefore,

Houston and MWH are not the only competent witnesses.  Thus, the Rosellis' claim that MWH

cannot represent the Liquidating Agent because its attorneys are necessary witnesses must fail.

In sum, the Motion to Disqualify is founded on a false premise, the notion that MWH

represented the Roselli's individually and gave them personal legal advice.  The Rosellis' fall back

arguments similarly fail, factually and legally.

## II.    SANCTIONS

We next consider the Liquidating Agent's countermotion for sanctions under Rule 11.

Rule 9011 of the Federal Rules of Bankruptcy Procedure govern representations made to

the Court and related sanctions against parties and their attorneys.  Specifically, Rule 9011(b)

provides:

> By representing to the court (whether by signing, filing, submitting, or later
> advocating) a petition, pleading, written motion, or other paper, an attorney or
> unrepresented party is certifying that to the best of the person's knowledge,
> information, and belief, formed after an inquiry reasonable under the
> circumstances. . . (1) it is not being presented for any improper purpose, such as to
> harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by
> existing law or by a nonfrivolous argument for the extension, modification, or
> reversal of existing law or the establishment of new law; [and] (3) the allegations
> and other factual contentions have evidentiary support or, if specifically so
> identified, are likely to have evidentiary support after a reasonable opportunity for
> further investigation or discovery. . . ."

Fed. R. Bankr. P. 9011(b)(1)-(3).

In evaluating violations of Bankruptcy Rule 9011, "courts may look to cases that interpret

Federal Rule of Civil Procedure 11."  *McGahren v. First Citizens Bank & Trust Co. (In re Weiss)*,

111 F.3d 1159, 1170 (4th Cir. 1997).  Furthermore, "[i]n determining whether a signatory violated

Rule 11, the court must apply an objective standard of reasonableness."  *Id.*  Indeed, "[t]he prefiling

investigation must appear objectively reasonable."  *Brubaker v. City of Richmond*, 943 F.2d 1363,

1373 (4th Cir. 1991).

If it is determined that Rule 9011(b) has been violated, then the court can "impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Fed. R. Bankr. P. 9011(c). Such sanction may be nonmonetary "or, if imposed on motion and warranted for effective deterrence, an order directing payment of the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." *Id.*

In determining the appropriate sanction, courts are guided by the "type and number of Rule 11 violations. . ." along with the party's purpose. *Robinson Def. Comm. v. Britt (In re Kunstler)*, 914 F.2d 505, 519 (4th Cir. 1990). Although it is not uncommon for courts to begin the Rule 11 inquiry with an analysis of 9011(b)(1), courts should "consider the first two prongs of Rule 11 before making a determination of improper purpose." *Id.*

**A. The Motion to Disqualify is Not Warranted by Existing Law.**

By filing the Motion to Disqualify, Pearce is certifying to the Court that the "legal contentions are warranted by existing law." Fed. R. Bankr. P. 9011(b)(2).

> A legal contention is not warranted by existing law if it is based on legal theories that are plainly foreclosed by well-established legal principles and authority precedent, unless the advocate plainly states that he or she is arguing for a reversal or change of law and presents a nonfrivolous argument in support of that position. A legal contention that is made in spite of the obvious preclusive effect of a judgment in a prior litigation is not warranted by existing law.

*Wahler v. Countrywide Home Loans, Inc.*, 2006 U.S. Dist. LEXIS 86413, *19 (W.D.N.C. June 14, 2006) (quoting 2 Moore's Federal Practice, § 11.11[7][a] (Matthew Bender 3d ed.).

Moreover, sanctions are proper under Rule 9011(b)(2) where a party's arguments are foreclosed by the "law of the case" doctrine. *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1996); *see also*, 10 Collier on Bankruptcy ¶ 9011.04 [6][a] (16th 2017) ("[s]anctions may be imposed for asserting claims that have been barred by the law of the case.").

Here, the Motion to Disqualify is not supported by existing law for multiple reasons.

1. The Rosellis' Assertions of Impermissible Conflicts are Barred by the Doctrine of Res Judicata.

Under the doctrine of *res judicata*, parties are precluded from litigating issues that have been or could have been litigated in a prior proceeding. *Pueschel v. United States*, 369 F.3d 345, 355-356 (4th Cir. 2004). For the doctrine to be applicable, there must be: "(1) a final judgment on the merits in the prior suit; (2) an identity of the cause of action in both the earlier and later suit; and (3) an identity of parties or their privies in the two suits." *Id*. at 354-355 (citing *Nash County Bd. of Ed. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981)). Notably, in the context of bankruptcy fee and retention litigation, "a final fee order is a bar to any claim that was or could have been raised at the time the final fee application is considered." *AASI Creditor Liquidating Trust v. Raymond James & Assocs. (In re All Am. Semiconductor, Inc.)*, 427 B.R. 559, 568 (Bankr. S.D. Fla. 2010).

In the present case, all three prongs of *res judicata* are satisfied.

First, there are a number of final orders that prohibit the Rosellis from asserting that MWH represented them in this case. Specifically, the Retention Order, the Final Fee Order, and the Second Retention Order.

Second, there is an "identity of the cause of action" whenever the claims "'arise out of the same transaction or series of transactions or the same core of operative facts.'" *Union Carbide Corp. v. Richards*, 721 F.3d 307, 315 (4th Cir. 2013). The Fourth Circuit has held that approval of a final fee application precludes re-litigating issues that were or could have been raised in the context of the final fee application. *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003).

Approval of a final fee application under Section 330 obviously also includes an express or implied determination that the estate professional is free of conflicts, since employment under Section 327 is a condition precedent to the allowance of a final fee application under Section 330. *See* 11 U.S.C. § 330(a)(1) (illustrating that a professional must be employed under Section 327 to be compensated under Section 330).

Accordingly, when this Court approved MWH's final fee application it simultaneously found that "that the firm's services were acceptable throughout its representation of [the Debtor]." Grausz, 321 F.3d at 473.  This determination necessarily included findings that MWH was free from conflicts, that it did not hold or represent interests adverse to the estate, and that it was "disinterested."  Such findings are conditions precedent to retention under 11 U.S.C.§ 327(a) and allowance of compensation under 11 U.S.C.§ 330(a).

Accordingly, the Rosellis are foreclosed from asserting, ex post facto, that 1) MWH/Houston represented them in this case and 2) MWH/Houston were conflicted.

The third element of *res judicata* is satisfied here because there is also an identity of the parties.  "A party, for purposes of former adjudication, includes 'all who are directly interested in the subject matter and who have a right to make defense, control the proceedings, examine and cross-examine witnesses and appeal from the judgment if an appeal lies.'"  *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1550-1551 (11th Cir. 1990) (quoting 1 A. Freeman, A Treatise of the Law of Judgments § 430, at 936-37 (5th Ed. 1925)).  Moreover, Section 1109 of the Bankruptcy Code defines parties in interest in a Chapter 11 case and provides that "a creditor, and equity security holder. . ." and other parties in interest have a right to be heard.  11 U.S.C. § 1109(b).

The Rosellis were parties in the context of the Final Fee Application. They were listed as creditors in this case and they were the Debtor's equity security holders. They were also served with all of the motions leading to the Final Fee Application, and both were separately represented by counsel during the Chapter 11 case. Furthermore, they both had a right to object to the Final Fee Application and to appeal the Final Fee Order. They did neither and they are barred from asserting that MWH or Houston represented them in the bankruptcy case.

2. The Rosellis' Arguments are Foreclosed by The Law of the Case Doctrine.

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *United States v. Aramony,* 166 F.3d 655, 661 (4th Cir. 1999) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-816 (1988).

The Rosellis' Brief argues that the law of the case doctrine is inapplicable because "[t]he allegations in the disqualification motion were not, nor could they have been, litigated. . ." at the time of filing of the Retention Application and Second Retention Application because the offending conduct of MWH and Houston occurred subsequently. AP no. 17-03063, docket no. 92. However, the Rosellis seem to ignore their argument that Houston and MWH should be disqualified because the Complaint is litigation against former member managers of MWH's client, RedF. AP no. 17-03063, docket no. 4. In fact, Liquidating Agent's the Motion for Sanctions seeks to narrowly apply the law of the case doctrine to the issue of whether MWH or Houston served as the Rosellis' personal counsel. In that respect, the Rosellis are, in fact, precluded from arguing that the Court should disqualify MWH due to a conflict of interest. The issue (the alleged conflict of interest) was apparent since July 2013 and was previously determined by final orders entered following actual hearings where the question was fully litigated.

3.   The Motion to Disqualify Disregards Basic Rules Governing Organizations as Clients.

As thoroughly discussed above, and except as supplanted by Section 327, the North Carolina Rules of Professional Conduct define who a corporate attorney represents.  *See* N.C. R. Prof. C. 1.13(a).  Despite the clear instruction provided in Rule 1.13 and its official comments, the Rosellis argue that Houston and MWH "Should be Disqualified Because the Complaint is Litigation Against Former Members and Managers of MWH's Client, Redf."  AP no. 17-03063, docket no. 4.

In an apparent attempt to rectify their deficient allegation, the Rosellis argue in their Brief that "the Motion to Disqualify does not allege that MWH or Mr. Houston represented Mr. and/or Ms. Roselli separately and apart from the representation of Redf. . . ."  AP no. 17-03063, docket no. 74.  Regardless of whether the Rosellis allege a joint representation rather than individual representation by Houston, this Court's orders, the Bankruptcy Code, and applicable state law make it clear that the Rosellis were not the clients of Houston or MWH.  Importantly, the Rosellis and Pearce were very much aware that there was no basis to claim such representation or reliance.

And even if the Roselli's were correct, if they somehow could claim representation by MWH, any conflict of interest in this instance would be one that was created, not by MWH but by the Rosellis' actions, taken long after any representation ended.

Under the state ethics law "thrust upon" doctrine, when a conflict of interest has not been created by any affirmative act of counsel, but has been thrust upon the law firm by a client's own actions (due to unforeseeable circumstances at the beginning of the representation), courts have routinely refused to grant motions to withdraw or motions to disqualify the affected law firm.  *See, e.g., Bd. Of Regents of the Univ. of Neb. V. BASF Corp.*, Case No. 4-CV-3356, 2006 WL 2385363 (D. Neb. 2006); *Installation Software Technologies, Inc. v. Wise Solutions, Inc.*, Case No. 03-C-

4502, 2004 WL 524829 (N.D. Ill. March 5, 2004); *Pioneer-Standard Electronics, Inc. v. Gap Gemini America, Inc.*, Case No. 1-CV-2185, 2002 WL 553460 (N.D. Ohio. March 11, 2002); *Carlyle Towers Condominium Ass'n, Inc. v. Crossland Savings, FSB*, 944 F. Supp 341 (D.N.J. 1996); *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 738 F. Supp. 1121 (N.D. Ohio 1990); *Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. 264 (D. Del. 1980). This doctrine has been applied in the context of clients intervening in ongoing litigation and seeking to disqualify a law firm based on a concurrent conflict of interest. *Id.* Comment 5 to Rule 1.7 explicitly recognizes a thrust upon conflict.

Here, the confirmed Plan removed the Rosellis from the case. Their claims against the estate were released; the estate's claims against themselves; also, their interests in RedF were terminated and the corporation was liquidated. Consummation removed the Rosellis from the playing field. Their return to the fray was not occasioned by the Liquidating Agent, nor by MWH. It came about due to the third-party complaints filed by the transfer defendants, and by the Rosellis' decision to attempt to have the Liquidating Agent's transfer suits dismissed. The same is true as to the Tax Refunds. It was the Rosellis' actions in amending the RedF returns without notice to or approval by the Liquidating Agent and claiming the monies in controversy in the IRS action, again without notice, that precipitated this action. The same is true as to the Rosellis' acts of asserting claims against the bankruptcy estate, after releasing all claims in the Plan. In each case, it was the Rosellis or a third party, not MWH, that created the "conflict"—long after any conceivable personal representation by MWH had ended. If there had been any personal representation of the Rosellis by MWH, and on the facts presented, clearly there was not, then the "thrust upon" doctrine would block disqualification.

4. The Roselli's Attorney-Witness Arguments are Frivolous.

As thoroughly discussed above, Rule 3.7 of the North Carolina Rules of Professional Conduct generally provides that an attorney may not act as an advocate at a trial in which the lawyer is likely to be a necessary witness.  N.C. R. Prof. C. 3.7(a).  Crucially, a witness is not "necessary" unless the witness is only witness that can testify as to a relevant and material fact. *Smith*, 749 S.E.2d at 510-11.  The Motion to Disqualify fails to identify any fact of consequence in the proceeding to which MWH or Houston is a necessary witness.  In fact, the Rosellis and Pearce are aware that they too are competent witnesses with personal knowledge of the allegations in the Complaint.

### B.  The Allegations in the Motion to Disqualify have no Evidentiary Support.

By filing the Motion to Disqualify, Pearce is certifying to the Court that "after an inquiry reasonable under the circumstances. . . (3) the allegations and other factual contentions have evidentiary support."  Fed. R. Bankr. P. 9011(b)(3).  Rule 9011(b)(3) requires attorneys, before filing a motion with the court, to "conduct a reasonable investigation of the factual bases underlying the claim."  *Chaplin v. Du Pont Advance Fiber Sys.*, 124 Fed. Appx. 771, 774 (4th Cir. 2005).  "When there is no factual basis for a particular claim, the attorney has violated Rule 11(b)(3)."  *Id.*

The objective evidence in this proceeding demonstrates that the Rosellis and Pearce filed the Motion to Disqualify despite knowing that the factual allegations contained therein were false. For example, the Rosellis allege that Houston and MWH should be disqualified because the Complaint is litigation against former members and managers of MWH's client, RedF. Specifically, the Rosellis rely Sara Roselli's "reasonable belief" that she was personally represented by RedF's attorney.  AP no. 17-03063, docket no. 4 at p. 9.  Again, this allegation is demonstrably false, as evidenced by:

a) Dan Roselli's sworn deposition testimony illustrating that MWH represented the DIP, Grier represented Dan Roselli personally, and Erwin Bishop represented Sara Roselli. Pearce personally attended this deposition;

b) Sara Roselli's sworn deposition testimony illustrating that MWH represented the DIP while Erwin Bishop represented her individually. Pearce personally attended this deposition;

c) Pearce's letter to MWH dated June 5, 2015, which stated "I realize that you and Moon Wright & Houston represented RedF, not Mr. Roselli or Ms. Garces;"

d) The docket in this case, which shows that Grier represents Dan Roselli and Erwin Bishop represents Sara Roselli;

e) The Retention Order and the Second Retention Order, which show that MWH represented RedF and the Liquidating Agent respectively, and no other party; and

f) The Confirmation Order, which plainly states that Grier represented Dan Roselli and Erwin Bishop represented Sara Roselli.

Effectively, the Rosellis and Pearce filed the Motion to Disqualify despite the Rosellis' sworn testimony (given in Pearce's presence), their own admissions, and the undeniable record in this case. Claiming that either of the Rosellis had the reasonable belief that they were represented by MWH or Houston is a violation of Rule 9011(b)(3).

**C. The Motion to Disqualify was Filed for an Improper Purpose.**

By filing the Motion to Disqualify, the Rosellis and Pearce certified that to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances. . . [the Motion to Disqualify] is not being presented for any improper purpose, such

as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R.

Bankr. P. 9011(b)(1).

A paper is filed for an "improper purpose" in violation of Rule 9011(b)(1) where it is filed

to embarrass a party or opposing counsel. *See Whitehead v. Food Max of Miss., Inc.*, 332 F.3d

796, 807 (5th Cir. 2003). Indeed, including "unsubstantiated, vituperative statements with regard

to the character and professional ethics of [opposing counsel] plainly constitutes a violation of

Rule 11." *Kahre v. United States*, 2003 U.S. Dist. LEXIS 6984, *17 (D. Nev. 2003). Moreover,

making statements to the media is "arguably the best evidence of [an] improper purpose."

*Whitehead*, 332 F.3d at 807.

The record demonstrates the filing of the Motion to Disqualify was purely tactical, driven

by anger, embarrassment, and "hurt feelings." Pearce and the Rosellis' improper motives for filing

the Motion to Disqualify are evidenced by several factors. First, the Motion to Disqualify makes

several allegations directed at MWH/Houston, such as alleging instances of "misconduct,"

"criminal extortion," and ethical violations—with no basis in fact or law. Such "[a]busive

language toward opposing counsel has no place in documents filed with our courts. . . ." *Coats v.

Pierre*, 890 F.2d 728, 734 (5th Cir. 1989). Second, Dan Roselli made several derogatory

comments to the media concerning Houston. Specifically, Dan Roselli stated he was "deeply

concerned about the ethics of Mr. Houston and his firm given the action that he has taken in this

case." Third, the timing of the Motion to Disqualify suggests that it was filed to gain a tactical

advantage. MWH has represented the Liquidating Agent since 2013, the Liquidating Agent has

been adverse to the Rosellis since October 2014, yet the purported conflict/ethical violation was

not raised with the Court until July 10, 2017.  Based on the foregoing, it appears that Pearce and

the Rosellis filed the Motion to Disqualify for an improper purpose. [10]

### D.  The Rosellis Share the Blame with Pearce for the Improper Filing.

Obviously, Pearce, as the attorney signing and filing this Motion to Disqualify, is

responsible for the filing's contents.  However, under the facts presented, the Rosellis are equally

responsible for this bad faith pleading.

As detailed in *Smith v. Bank of Stanly*, federal courts treat clients as being fully accountable

for the conduct of their attorneys.  No. 1:09CV951, 2014 WL 5034732, at *3–4 (M.D.N.C. Oct. 8,

2014).  Relying on agency law, the Fourth Circuit, along with other Circuit Courts of Appeals,

reason that because the client is the principal and the attorney is the client's agent, an attorney's

acts generally bind the client.  Id. (citing *Robinson v. Wix Filtration Corp.*, LLC, 599 F.3d 403,

409 (4th Cir.2010)).  However, several Circuit Courts of Appeals take the position that it is "unfair

to sanction a client who did not influence or participate in the attorney's misconduct."  *Id.* (citations

omitted).

While the Fourth Circuit has not directly articulated the standard for sanctioning a client

for attorney misconduct, it is evident that courts have the discretion to sanction clients for attorney

misconduct.  *Id.* at *4 (holding that sanctions against a client were not warranted where the client

was not involved in the sanctionable conduct.)

Here, based upon the circumstances described above, Pearce and the Rosellis are equally

responsible for this improper pleading.  Rather than an uninvolved client, the Rosellis were entirely

active in the runup to these motions and, in most instances, they were the party that caused or

---

[10] It is not for this Court to advise the State Bar on how it should treat Pearce's grievance against Houston or
Houston's counter grievance against Pearce.  However, from the perspective of the undersigned, both are ill-
motivated, tactical filings.

precipitated these events.  In fact, it is Dan Roselli's statements to the media that foreshadowed the motion to come.  The parties bear joint and several responsibility for the Motion to Disqualify.

## CONCLUSION

Had the Motion to Disqualify been filed for a legitimate purpose and in timely fashion, it is likely that sanctions would not have been imposed on anyone.  There were opportunities wherein these matters could have been considered on the merits and in an appropriate manner.  For instance, in July 2013, when the Liquidating Agent sought appointment of MWH as counsel, or even as late as August 2014, as the third party complaints were being filed against the Rosellis.

However, for the reasons stated, the Motion to Disqualify was not legally and factually warranted, and it was not interposed for a proper purpose.  Nor was it timely. Rather, the Rosellis/Pearce employed the Motion to Disqualify as a tactical weapon against the Liquidating Agent in defense of this action.  It was wielded in an effort to intimidate Houston and MWH from pursuing return of the Tax Refunds from the Rosellis in this action.[11]

That being so, the normal recourse would be to tax the offending parties and counsel with all of the Liquidating Agent's costs and attorneys fees, and perhaps to interpose other sanctions to deter future conduct of this sort.

What makes the determination of a proper sanction difficult in the current instance is that the Motion to Disqualify does not stand alone in this action.

As noted, relations between the two sides were tense from the outset, were ratcheted up as the case proceeded through the clawback litigation and depositions, and reached full fever pitch after the Rosellis, without warning, amended the corporate tax returns of RedF

---

[11] Ironically, the Roselli's later prevailed on that question of ownership; although, had the Liquidating Agent not granted a release to them, he may have been able to recover those monies as a fraudulent conveyance.

and thereby claimed the Tax Refunds as their own.   At this point, a very frustrated Liquidating Agent sued them for all alleged transgressions.   This precipitated further aggressive behavior by the two sides: Dan Roselli's interview with local media; the Motion to Disqualify and grievance by Pearce against Houston; the countermotion by the Liquidating Agent for Sanctions; and the bar grievance by Houston against Pearce.

All of this is most unfortunate.   Both attorneys are diligent, competent, and decent people.   They have practiced in this Bankruptcy Court for many years.   The Undersigned has had many opportunities to observe their professional behavior and has generally found it to be commendable.   However, in this case, each attorney lost all sense of proportion in trying to best his opponent.   Frankly, Pearce was "egged on" by the Rosellis—two clients who have demonstrated in this proceeding and in the U.S. District Court that they have a skewed notion of right and wrong.   In any event, both attorneys lost their cool and have in the course of these events embarrassed themselves.

The Motion to Disqualify was not well founded.   While legally correct, the Motion for Sanctions is also the product of vitriol and anger.   Had cooler heads prevailed, none of this would have been necessary.   The litigation surrounding these motions has been disproportionate and unwarranted.   All of this must be considered in determining an appropriate Rule 11 sanction.

If the present participants share blame for these events to one degree or another,[12] the estate did not.   The creditors of the bankruptcy estate should not have to bear the costs of these personal vendettas.   The Rosellis and Pearce will bear a portion of the Liquidating Agent's costs and fees associated with these motions, but not all.   However, the estate will

---

[12] In this we exclude the Liquidating Agent as there is no indication in this record that The Finley Group acted improperly.

not bear full responsibility for the remainder.  Rather, MWH will see a reduction of their allowed costs and fees proportionate to their responsibility for these unseemly events.

To that end, the Liquidating Agent, and MWH are hereby **ORDERED** to file, within **21 DAYS** of the entry of this order, an affidavit reflecting MWH's attorney's fees and expenses incurred in defending against the Motion to Disqualify and prosecuting the Motion for Sanctions.  The Liquidating Agent will provide an accounting for its costs and fees as to the same.  After which, and should they have objections, the Rosellis shall have **14 DAYS** to file a Response thereto, contesting the sums sought.  The Court will thereafter consider the reasonableness of these costs and expenses and allocate financial responsibility for these actions.

In addition to the parties, the Clerk of Court shall serve a copy of this Order on the North Carolina State Bar.

**SO ORDERED**.

This Order has been signed                                    United   States   Bankruptcy   Court
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.